**PROVIDENCE WASHINGTON INSURANCE COMPANY OF ALASKA, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANIES and Pine Top Insurance Company, Appellees.**

No. S–2335.

Supreme Court of Alaska.

July 28, 1989.

Robert C. Erwin, Erwin & Smith, Anchorage, for appellant.

A. Richard Dykstra, William G. Royce, Traeger Machetanz, Stafford, Frey, Mertel & Royce, Anchorage, for appellee Fireman's Fund Ins. Companies.

No appearance by appellee Pine Top Ins. Co.

Before MATTHEWS, and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

## I. INTRODUCTION

Arctic Coast Fisheries (ACF) obtained a judgment against the City of Valdez (City), for which the City's insurers were liable. Fireman's Fund Insurance Companies (Fireman's Fund), one of the City's excess insurance carriers, negotiated a settlement with the City for an amount less than the

original judgment. All of the City's insurance carriers contributed to the settlement. Fireman's Fund then sued Providence Washington Insurance Company of Alaska (Providence Washington), claiming Providence Washington was liable for post-judgment interest under the terms of its policy. The trial court granted summary judgment to Fireman's Fund, concluding that Providence Washington was liable for post-judgment interest, notwithstanding the fact that the settlement was for less than the amount of the original judgment. Additionally, the trial court concluded that Providence Washington had not tendered its policy limits, which would have thereby terminated further accrual of its obligation to pay post-judgment interest. Providence Washington appeals. For the reasons hereinafter set forth, we affirm the trial court's conclusion holding Providence Washington liable for post-judgment interest. However, we remand this case to the trial court for a recomputation of the amount of post-judgment interest for which Providence Washington is liable.

## II. FACTUAL AND PROCEDURAL BACKGROUND

ACF filed suit against the City for wrongful termination of a lease, and on June 1, 1983, judgment was entered against the City. The judgment included a $5.5 million jury verdict, costs, attorney fees and pre-judgment interest, and totaled $7,795,648.55. This sum was to bear interest at the rate of 10.5% per annum.[1] The City moved for a remittitur and a new trial. Both motions were denied and the City appealed. Before this court could render a decision on the appeal, ACF and the City's insurance carriers settled the case for $6.5 million.

At the time of ACF's claim, the City was insured by policies written by three companies: Providence Washington, Pine Top Insurance Company (Pine Top), and Fireman's Fund. The coverage was provided in

"layers" as follows: Providence Washington provided primary coverage with policy limits of $500,000; Pine Top provided a layer of excess coverage above Providence Washington's with policy limits of $3.5 million; Fireman's Fund provided the "top" layer above the $4 million accounted for by the first two insurance carriers, with policy limits of $6 million.

Included in Providence Washington's policy is a "supplementary payments" clause which provides that:

> The company will pay, in addition to the applicable limit of liability:
>
> a) All expenses incurred by the company, all costs taxed against the insured in any suit defended by the company *and all interest on the entire amount of any judgment therein* which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon.

(Emphasis added). This clause is the focal point of Fireman's Fund's claim against Providence Washington for post-judgment interest.

Settlement negotiations between the insurance carriers and ACF began following entry of judgment. In a letter dated October 31, 1983, Glen Smith, claims manager for Providence Washington, wrote Mary Elliott, claims analyst for Pine Top, that "Providence Washington is in the position to pay their policy limits plus add ons." In a letter from Smith to Elliott dated December 14, 1983, Smith wrote:

> Please be advised that Providence Washington is in a position, as in the past, to offer their policy limits plus Rule 82 and post-judgment interest.

Smith went on in that letter to observe that the amount Providence Washington would pay would depend on the success or failure of the remittitur motion then pending.[2] If the motion was successful, Prov-

---

**1.** On October 22, 1984, the trial court ordered the judgment modified to $7,364,736.00 to account for a reduction in attorney's fees.

**2.** These two letters form the basis for Providence Washington's claim that it had tendered its policy limits, thereby tolling the accrual of post-judgment interest for which it was liable

idence Washington's add on costs would be based on the remittitur amount or the amount of settlement, whichever was less.

Little progress was made with the negotiations through 1984. By February 1985, it was clear that Pine Top, apparently unable to settle within its policy limits, had relinquished control of settlement negotiations to Fireman's Fund. In March, counsel for Providence Washington, wrote to Fireman's Fund that he had recommended that Providence Washington contribute $1 million to a settlement "to resolve all issues among all parties." A few weeks later, Pine Top's counsel wrote Fireman's Fund that Pine Top was willing to contribute to a $4.5 million offer, but that it wanted the right to litigate with Providence Washington regarding each carrier's appropriate share.[3]

In June Fireman's Fund filed a complaint against Providence Washington and Pine Top alleging breach of duty to the insured of good faith, due care, and reasonable diligence in handling the defense of the *Arctic Coast Fisheries, Inc. v. City of Valdez* case. Providence Washington answered, denying liability and counter-claiming against Fireman's Fund for its pro rata share of defense costs and attorney's fees.

Meanwhile, settlement negotiations continued between the insurance carriers and ACF. In August 1985 counsel for Fireman's Fund requested that Providence Washington contribute enough money to cover post-judgment interest. Counsel for Providence Washington did not agree to this proposal. In August Fireman's Fund sent ACF an offer to settle all ACF claims for the total amount of $6 million. The offer was conditioned on Providence Washington and Pine Top paying $1 million and $3.5 million respectively, without requiring Fireman's Fund to waive any of its rights or claims against either of the other carriers. The offer also explicitly stated that it

would be withdrawn upon receipt of any counter-offer. A week later ACF sent Fireman's Fund a letter to confirm a telephone conversation, the entire contents of which are not of record, wherein Fireman's Fund agreed to a $6.5 million figure. This offer was conditioned on Providence Washington and Pine Top covering $4.5 million of the total. The total of $6.5 million was to be in exchange for a "full satisfaction of judgment" and dismissal of the appeal. This letter from ACF made no mention of any agreements between the three insurance carriers themselves, other than how much each would be contributing to the settlement, nor did it refer to Fireman's Fund's previous reservation of rights against the other two insurance carriers.

On August 23, Providence Washington sent Fireman's Fund a check for $1 million, to be held in escrow until finally paid to ACF, "to protect the City of Valdez and Providence Washington in respect to the settlement." On September 10, the vice president of the Bank of America, as partial assignee of the judgment in the *Arctic Coast Fisheries, Inc. v. City of Valdez* litigation executed a partial satisfaction of judgment. On September 13, the president of ACF signed a satisfaction of judgment, fully satisfying the judgment. The satisfaction recited receipt by ACF of $3,900,000.00, which represented the balance due it after deduction of the partial assignment to the Bank of America. That amount, together with the $2,600,000.00 recited as received by the Bank of America, totalled $6.5 million. On October 8, the City's appeal was dismissed by agreement. The settlement consisted of the following contributions from the insurance companies: Providence Washington, $1 million; Pine Top, $3.5 million; Fireman's Fund, $2 million. Two days later counsel for Fireman's Fund sent Providence Washington a letter noting that there was "no comprehensive

---

under the supplementary payments clause of its policy.

3. Pine Top is not a party to this appeal. Even though we affirm the trial court's decision that Providence Washington owes post-judgment interest, the reduction in the excess carrier's liabil-

ity would not extend through Fireman's Fund's layer into Pine Top's. Note, however, that the question of Providence Washington's total liability was unsettled as between the insurance carriers while negotiations took place in 1985.

document of settlement other than the August 20, 1985 letter from [ACF]".

Fireman's Fund amended its complaint against Providence Washington to include a claim for post-judgment interest in the additional amount of $1,402,351.00. Providence Washington amended its answer, denying liability and adding counter-claims against Fireman's Fund for bad faith and negligence in the manner in which it conducted the ACF settlement.

Fireman's Fund moved for partial summary judgment on the issue of Providence Washington's liability, including post-judgment interest. Summary judgment was granted, and the trial court entered Findings of Fact and Conclusions of Law and a Civil Rule 54(b)[4] certification. The judgment, including pre-judgment interest, totaled $1,658,925.28. This figure represented the balance of Providence Washington's full liability, computed on the basis of the post-judgment interest owing ACF on the amount of the original judgment at the time ACF compromised that judgment and settled its claim against the City for $6.5 million. Providence Washington timely filed a Notice of Appeal.

### III. STANDARD OF REVIEW

In reviewing a grant of summary judgment, we "must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts." *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). We draw all reasonable inferences of fact from proffered materials against the moving party and in favor of the non-moving party. *Howarth v. First National Bank*, 540 P.2d 486, 490 (Alaska

1975), *aff'd on rehearing*, 551 P.2d 934 (Alaska 1976).

### IV. DISCUSSION

A. *The Supplementary Payment's Clause.*

■ In its Findings of Fact and Conclusions of Law, the trial court stated that Providence Washington's obligation to pay interest on the entire judgment flowed from its policy language. Here, the grant of summary judgment may be upheld if the trial court's construction of the insurance contract was proper. Absent controverted facts, the construction of an insurance contract is determined as a matter of law by the court. *O'Neill Investigations v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981).

Where no ambiguity exists the court "should not do violence to the plain terms of a contract." *Ness v. National Indem. Co. of Nebraska*, 247 F.Supp. 944, 947 (D.Alaska 1965). We give effect to the language where the terms of a policy are clear an unambiguous. *Werley v. United Servs. Auto. Ass'n*, 498 P.2d 112, 116 (Alaska 1972).

Applying the foregoing principles to this case, we conclude that the trial court correctly held that Providence Washington was obligated to pay post-judgment interest on the entire judgment. Its "supplementary payments" clause clearly and unambiguously obligated it to pay "all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court" its policy limits. The terms of this clause clearly obligate Providence Washington to pay all post-judgment interest on the entire judg-

---

**4.** Civil Rule 54(b) provides:

Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express di-

rection for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

ment. Thus, we conclude the trial court did not err in its interpretation of the "supplementary payments" clause.

This conclusion comports with the decisions from other jurisdictions, holding that supplementary payments clauses obligate the insurer to pay interest on the entire judgment. Annotation, *Liability Insurers Liability for Interest and Costs on Excess Judgments Over Policy Limits,* 76 A.L. R.2d 983 (1961). As observed therein, the insurer controls the amount of interest; it may at any time tender or deposit in court its policy limits, tolling the accrual of interest. *Id.* at 988.

### B. *Tender of the Policy Limits.*

█ Next we must determine whether Providence Washington effectively tendered its policy limits. If it did, then the trial court erroneously charged Providence Washington with interest beyond October 1983.[5] Because no genuine issue of material fact exists, Fireman's Fund is entitled to summary judgment on this issue if the trial court properly applied the law to the established facts.

Providence Washington argues that the trial court erred in holding that it had not tendered its policy limits in 1983. It contends that its letter of October 31, 1983, was a tender of its policy limits. In that letter to Pine Top and a follow-up letter dated December 14, 1983, Providence Washington stated that it was in a position to make its policy limits plus add on costs available. From these letters it argues that it was ready, willing and able to contribute its policy limits. Thus it concludes that it tendered its policy limits, tolling the accrual of post-judgment interest with its October 31, 1983 letter to Pine Top.

At common law tender requires that the thing actually be produced and made available for acceptance and appropriation by the person to whom it is offered. *Bembridge v. Miller,* 385 P.2d 172, 175 (Or. 1963). Similarly, in the context of insurance policy supplementary payments clauses, the "company must *unconditionally* surrender control over funds equal to its potential liability in order to satisfy the contractual obligation of 'tender[ ].' " *Knippen v. Glen Falls Ins. Co.,* 564 F.2d 525, 530 (D.C.Cir.1977) (emphasis in original). As observed by the court in *Knippen,* it is illogical to absolve the company of its liability for post-judgment interest when it is itself earning interest on that same money. *Id.* at 531.

█ Applying the foregoing to this case, Providence Washington did not tender its policy limits in October 1983. It did not surrender control of the funds representing its portion of the judgment on that date. However, Providence Washington did give up control of its portion of the judgment on August 23, 1985. On that date, Providence Washington deposited one million dollars into the settlement trust fund. Clearly, Providence Washington gave up control over the funds at that time and stopped earning interest on them. It does not matter that it conditioned its surrender of the funds on their return if the settlement failed. If the settlement offer had failed, post-judgment interest would have continued to accrue. Thus, for the period of time Providence Washington was earning interest on its portion of the judgment, it is liable for post-judgment interest. The trial court erred in holding Providence Washington liable for post-judgment interest between August 23 and September 13, 1985,[6] the date the judgment was satisfied.

---

**5.** *See supra,* note 2.

**6.** We find Providence Washington's other arguments regarding this issue to be without merit. Providence Washington is not in a position to complain about any misconduct of Fireman's Fund that may have increased the amount of post-judgment interest. At all relevant times, it had the ability to tender its policy limits to ACF; it chose not to. It conceded that its policy limits

would undoubtedly be exhausted by the ACF case.

Its argument that insurance companies have resolution procedures, making the rules of tender between companies different than those between insurance companies and third parties inapplicable, is without merit. It offers no support for this assertion, nor does it offer evidence of an industry custom or practice.

## V. CONCLUSION

Based on the foregoing, we conclude that the trial court correctly granted Fireman's Fund partial summary judgment. Therefore, we AFFIRM the grant of summary judgment, but REMAND this case for a recomputation of the amount of post-judgment interest for which Providence Washington is liable.[7]

[7.] Providence Washington raised three additional arguments. It argued that: 1) the judgment never became a legal obligation of Valdez; therefore, it did not owe interest on the judgment; 2) the trial court had no evidence with which to conclude that any part of the settlement represented interest; 3) the amount of post-judgment interest it is liable for should be reduced by the ratio of the settlement to the total judgment. We find these arguments to be without merit.