Serena L. O'DONNELL, Appellant,

v.

Iris I. JOHNSON, John F. Johnson, and Jane Doe, Appellees.

No. S–12938.

Supreme Court of Alaska.

June 5, 2009.

---

Brett von Gemmingen, Law Offices of Brett von Gemmingen, LLC, Anchorage, for Appellant.

Barry J. Kell, Call, Hanson & Kell, P.C., Anchorage, for Appellees Iris I. Johnson and John F. Johnson.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

CARPENETI, Justice.

## I. INTRODUCTION

The plaintiff's insurer paid her medical bills, thus acquiring a subrogation interest against the defendant and the defendant's insurer. The plaintiff's insurer informed the plaintiff's attorney that it would recover its subrogated medical payments directly from the defendant's insurer. The eventual settlement in the suit between the plaintiff and the defendant provided that, in addition to payment to the plaintiff, the defendant's insurer would satisfy the subrogated medical claim

directly with the plaintiff's insurer. The plaintiff's attorney nonetheless sought a portion of the subrogated medical payment as fees under the common fund doctrine, but the superior court refused. Because our settled case law controls this case and has not been altered by later case law, and because the plain language of the settlement offer did not contemplate that defendants would pay any part of the subrogated claim directly to plaintiff, we affirm the superior court's exclusion of the subrogation payment from the judgment entered and the superior court's determination that the defendant owes no additional attorney's fees. On the issue of post-judgment interest, we also affirm the decision of the superior court because the defendant repeatedly attempted to pay the plaintiff.

## II. FACTS AND PROCEEDINGS

In November 2002 Serena O'Donnell, insured by State Farm, was injured in an auto accident caused by Iris Johnson, who was insured by Allstate. After the accident, State Farm paid O'Donnell's medical bills, totaling $14,047, under the medical payments coverage portion of her policy, thereby obtaining a subrogated claim against the other driver and Allstate. In April 2003 State Farm sent a letter to O'Donnell's attorney informing him that it would pursue its subrogated interest directly with Allstate, and requesting that he not "incur any expense or attorney's time on behalf of collection of" State Farm's medical payment lien. In February 2004 State Farm sent a letter to Allstate asserting a subrogation claim for the medical payment lien.

In July 2007 the Johnsons made an offer of judgment to O'Donnell. The terms of the offer were that the Johnsons would

> allow entry of judgment for plaintiff SERENA O'DONNELL in this action for the sum of SIXTEEN THOUSAND DOLLARS ($16,000) plus Civil Rule 79 costs, prejudgment interest, and schedule[ ] Rule 82(b)(1) attorney's fees. In addition, Allstate will satisfy the State Farm Insurance Company lien/subrogation interest ($14,-046.80) directly to State Farm Insurance Company.

O'Donnell accepted the offer ten days later. On the same day, she filed a proposed final judgment with the superior court. That proposed judgment added the State Farm subrogation amount to the $16,000 to be paid to O'Donnell to result in a $30,047 principal amount. The superior court entered this proposed judgment as the final judgment on August 1, 2007, omitting attorney's fees and costs from the total.

On August 29, 2007, the Johnsons objected to the proposed final judgment on the grounds that the judgment was contrary to Alaska law and the plain language of the agreement. O'Donnell responded that the objection was untimely, having been due within ten days of the entry of judgment in accordance with Alaska Rules of Civil Procedure 59(f) and 58.1(c)(3). In October 2007 the court determined that it had erred in signing the previous final judgment because of the omission of costs and fees and because the base figure for calculation of attorney's fees should not have included the satisfaction of the subrogated medical payment. The court vacated the judgment, and granted the Johnsons' Motion for Relief of Judgment, calculating the fees, costs, and interest on the basis of the $16,000 offered to O'Donnell in the original offer for judgment.

O'Donnell then moved to join Allstate and State Farm, claiming that State Farm was obligated to make an appearance in the case if it was the "real party in interest" regarding the medical payment claim, and that Allstate also should be joined, because Allstate's offer to pay State Farm was an essential part of the judgment. O'Donnell claimed these joinders were necessary to protect O'Donnell against later claims for reimbursement from State Farm from the judgment paid to her and to ensure enforcement of all of the terms of the Johnsons' offer of judgment to O'Donnell. The Johnsons opposed the motion on the ground that the State Farm claim was never an element of O'Donnell's damages in her suit against the Johnsons under this court's rule in *Ruggles v. Grow*[1] that a subrogated claim belongs to the insurer, who can-

1. 984 P.2d 509 (Alaska 1999).

not be required to assert its claim as part of its insured's claim against the tortfeasor. Further, the Johnsons argued that O'Donnell was aware at the time the agreement was signed that Allstate was not a party to the agreement. The court denied the motion to join the insurance companies and entered final judgment in November 2007.

Several additional post-judgment motions were then litigated. These motions primarily concerned O'Donnell's attorney's refusal to accept payment from Allstate of the judgment calculated in October and refusal to sign a satisfaction of judgment, as well as the Johnsons' attempts to obtain the release from the court registry of funds seized from their personal bank account by O'Donnell after the initial incorrect judgment. For the first time in late November, O'Donnell's attorney notified the Johnsons by letter of his belief that they should pay one-third of the State Farm medical payment subrogation amount to him, although the letter also acknowledged that at that time the full claim had been paid directly to State Farm. At a hearing in January 2008, O'Donnell argued that this court's ruling in *Sidney v. Allstate*,[2] handed down that month, supported his claim that Allstate should pay him one-third of the sum it had already paid to State Farm. The superior court asked for briefing on that issue.

The Johnsons argued to the superior court that *Sidney* affirmed the *Ruggles* rule. Therefore, Allstate did not owe any additional money on top of the settlement amounts already paid, and any claim for attorney's fees from the common fund should have been made against O'Donnell's insurer under the common fund doctrine. O'Donnell replied that the money in the registry should simply be released to her. This money was the Johnsons' personal money seized immediately after the initial judgment of $38,241 in August 2007, which the Johnsons had been attempting to have released from the court registry since November 2007. O'Donnell also quoted the Johnsons' counsel's state-ment at the January hearing that, assuming common fund moneys were owed, Allstate would be liable for them rather than the Johnsons.

The superior court issued a final order on these issues in February 2008. The court did not require the signing of a satisfaction of judgment, but ruled for the Johnsons on all other issues, ordering that (1) the Johnsons' personal funds be released to them, (2) O'Donnell accept the check from Allstate representing the corrected judgment amount determined in November 2007, (3) O'Donnell was not entitled to attorney's fees on the State Farm medical payments claim, and (4) "if the Alaska Supreme Court reverses this Court on the medical lien attorney's fees issue, then the amount owed to any Plaintiff ... shall be paid by Allstate and not Iris Johnson or John Johnson."

O'Donnell appeals, raising three issues: First, she argues that the final judgment should have included the State Farm lien amount, either because the offer should have been interpreted to include that amount or because otherwise she would have been unable to enforce Allstate's promise to satisfy the State Farm lien. Second, she claims that the common fund doctrine mandates payment of attorney's fees on the State Farm lien. Finally, she argues that post-judgment interest should have been awarded until the date that she accepted payment regardless of any fault on her part in the delay in accepting payment.

### III. STANDARD OF REVIEW

Because interpreting the offer of judgment involves contract interpretation, we independently review whether the final judgment should have included the subrogated medical payment amount and whether Allstate or the Johnsons should have been required to pay any additional fees to O'Donnell.[3] The cor-

---

**2.** 187 P.3d 443 (Alaska 2008) (holding that underinsured motorist's carrier was liable for pro rata share of attorney's fees and costs for insured's efforts to obtain settlement with liability insurer).

**3.** *See Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 638 (Alaska 2007).

rect interpretation of our precedents also calls for independent review,[4] as does determining the proper period of time for a post-judgment interest calculation.[5]

## IV. DISCUSSION

### A. It Was Not Error To Exclude the Subrogation Claim from the Calculation of Final Judgment.

▆ Under *Ruggles v. Grow,*[6] an insurer may explicitly direct its insured not to pursue its medical subrogation claim as part of the insured's lawsuit against the tortfeasor.[7] Once the insurer has done so, the subrogated claim cannot be part of the insured's claim.[8] State Farm cited *Ruggles* in a letter to O'Donnell's counsel early in the litigation process and directed him not to expend litigation efforts to recoup State Farm's claim. State Farm then presented its claim directly to Allstate and requested that Allstate communicate directly with State Farm. The offer of judgment stated that Allstate would satisfy the medical subrogation lien directly with State Farm and explicitly did not include that amount in the judgment that the offer stated it would allow to be entered against the Johnsons.

O'Donnell presents two lines of argument for concluding that the judge erred in excluding the lien amount from the judgment. The first is that the offer was ambiguous and that her interpretation was more reasonable than the Johnsons' interpretation; that is, that the Johnsons and the court misinterpreted the offer. The second is that the promise to satisfy the lien might not be enforceable because it was between non-parties to the suit. Neither argument succeeds.

### 1. The offer of judgment was not ambiguous.

O'Donnell asserts that the judgment "did not match the terms of the Rule 68 offer of judgment" and that she did not get the "benefit of her bargain." Although the offer explicitly stated she would receive judgment in the amount of $16,000, she suggests there was room to disregard that unambiguous language and award judgment for $16,000 plus the medical lien amount. This appears to be because she assumed that the agreement referred to the fact that Allstate would satisfy the lien to State Farm only because she bargained for it. Therefore she also assumed that the offer represented a "common fund." We have applied the common fund doctrine in situations in which an injured party's insurer benefits from her recovery of a settlement fund from which her insurer satisfies its medical lien subrogation.[9] O'Donnell appears to argue that the language of this agreement should have been interpreted to give rise to such rights.

But here such an interpretation was unreasonable in light of Alaska law, which allows an insurer, by explicit direction, to prevent its insured from pursuing the insurer's subrogation claim. It was not possible under Alaska law for O'Donnell to regain the right to collect money on behalf of State Farm after State Farm told her not to do so in clear and emphatic terms.[10] Further, the offer of judgment could not reasonably be interpreted to mean that the Johnsons agreed to have judgment in the amount of the lien entered against them, or that they would pay any part of the subrogated medical payment claim to O'Donnell. The first sentence of the offer explicitly states that it will allow judgment to be entered against Johnson for $16,000 plus costs and attorney's

**4.** *Sidney,* 187 P.3d at 448.

**5.** *Pagenkopf,* 165 P.3d at 644.

**6.** 984 P.2d 509.

**7.** *Id.* at 512 ("Once [a request not to present insurer's claim] was made [plaintiff] lost the right to present the claim.").

**8.** *See id.*

**9.** *See, e.g., Alaska Native Tribal Health Consortium v. Settlement Funds Held for or to be Paid on*

*Behalf of E.R. ex rel. Ridley,* 84 P.3d 418, 432 (Alaska 2004) (applying equitable considerations to health care provider lien recovery and finding pro rata share of attorney's fees owed because injured party's litigation benefitted hospital with lien, hospital appreciated benefit, and it was unjust to allow hospital to benefit without paying its share of legal fees and costs).

**10.** *See Ruggles,* 984 P.2d at 512.

fees. The second sentence provides that All-state, "[i]n addition," will satisfy State Farm's subrogation amount directly to State Farm.

Further, since the common fund doctrine, where it applies, applies to benefitted insurers,[11] it would not have been a reasonable interpretation of the offer that it had any effect on whether O'Donnell would be entitled to collect attorney's fees from Allstate or the Johnsons beyond what was stated explicitly in the offer. The offer of judgment is unambiguous with respect to the obligations the Johnsons agreed to undertake, and O'Donnell's interpretation is unreasonable.

### 2. No enforceability problems existed such that joinder of the insurance companies was required.

■ O'Donnell further argues that unless the trial court joined State Farm and Allstate as parties, or made payment of the subrogation lien part of the judgment against the Johnsons, Allstate's promise to pay the lien would be unenforceable. She further argues that since the trial court denied her motions to join the insurance companies,[12] the only way to enforce her bargain with the Johnsons was to include the lien payment in the judgment. But she had no obligation to enforce the agreement as to Allstate's payment to State Farm: State Farm had already notified her that it would be pursuing the claim on its own behalf. Further, under our ruling in *Rice v. Denley*,[13] where two parties explicitly state that their settlement

does not include the injured party's insurer's subrogation claim, that insurer cannot collect its claim from the settlement.[14] O'Donnell therefore had no reasonable concern that if Allstate did not satisfy State Farm's subrogation claim directly with State Farm, that State Farm would then return to collect it from O'Donnell instead. The Johnsons' statement in the offer that Allstate would satisfy the medical payment claim directly with State Farm made it clear that the judgment for O'Donnell against the Johnsons did not include that amount.

*Ruggles* held that where an insurer acquires a subrogated interest by payment of its insured's medical expenses, that subrogated claim belongs to the insurer.[15] The plain language of the agreement and State Farm's express direction to its insured not to pursue its medical lien claim place this situation clearly under *Ruggles*. O'Donnell's claim did not and could not include State Farm's subrogated interest.

### B. It Was Not Error To Conclude that the Medical Payment Subrogation Satisfaction Was Not Common Fund Money for Which O'Donnell's Attorney Is Owed Fees.

O'Donnell argues that we should apply the common fund doctrine to this case without regard to the insurance company's directions to her not to pursue the case. First, she argues that under *Sidney*[16] we have already invoked the common fund doctrine without regard to insurance company authorization.

11. *Cooper v. Argonaut*, 556 P.2d 525, 527 (Alaska 1976) (interpreting worker's compensation statute in light of equitable principles and holding that "in order to insure that the employer's compensation carrier is not unjustly enriched at the expense of the employee, we read AS 23.30.015(g) to require the proration between the carrier and the employee of litigation costs and attorney's fees incurred by the employee in recovering from a third-party tort-feasor.").

12. Although she listed the denial of her motion to join the insurance companies in her statement of points on appeal, O'Donnell does not present any arguments on this point in her briefs. We therefore consider this issue abandoned. *See Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc.*, 694 P.2d 150, 153 n. 4 (Alaska 1984) (holding that issues raised in points on appeal, but not ade-

quately briefed, are deemed abandoned). However, the refusal to join the insurance companies would likely not be erroneous under the same reasoning used in this section.

13. 944 P.2d 497 (Alaska 1997).

14. *Id.* at 500 (holding that meeting of minds was required as to whether settled claim included victim's insurer's subrogated claim and noting that "if it was clear that both parties intended that the settlement agreement was only for the nonassigned portion of Denley's claim there would be no basis for Colonial to assert lien rights against the settlement proceeds.").

15. 984 P.2d 509, 512 (Alaska 1999).

16. 187 P.3d 443 (Alaska 2008).

Second, she argues that we should overrule *Ruggles* because of another equitable doctrine, the "made-whole" doctrine. We address each argument in turn.

1. *Sidney's* **holding regarding the requirement of insurer authorization in the application of the common-fund doctrine does not apply to this case.**

Under the common fund doctrine generally, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." [17] In the insurance context, where an injured plaintiff confers a benefit on his or her insurer by securing recovery for both, the insurer is liable for pro rata fees and costs based on what it recovers as a result of plaintiff's efforts. For example, in *Alaska Native Tribal Health Consortium v. Settlement Funds*[18] (*ANTHC*), patients recovered from third party tortfeasors funds that were ultimately used to used to satisfy the Consortium's medical liens for treatment of the patients.[19] Under unjust enrichment principles, we determined that it would be inequitable to allow the Consortium to retain the benefit of having its lien satisfied and not pay its share of fees and costs for the recovery. We relied on this rationale for the common fund doctrine:

> In hospital lien cases, the hospital's right to assert a lien, and its right to recovery based on that lien, depend by statute on the obtaining of a judgment or settlement. The proceeds of that judgment or settlement operate as a fund, and, without the fund, the hospital has nothing upon which to assert a lien.... [20]

The common fund doctrine is applied whenever a party obtains "well-defined benefits" for other parties.[21] In *ANTHC*, without the judgment obtained by the patients there would have been nothing on which to enforce the lien, and the Consortium was ready and willing to take the benefits of the common fund so obtained.[22] Thus, the elements of a common fund recovery under Alaska law are (1) the efforts of one party (2) result in the creation of a fund benefiting a third party (3) who is benefitted in a clear and well-defined manner, and (4) the third party is ready and willing to accept the benefits so obtained.

In *Sidney*, we addressed the issue of an insurer's readiness and willingness to accept the benefits of its insured's efforts where it accepted those benefits without objection.[23] In that case, Sidney, the insured driver, settled with the driver who injured her for the limits of the at-fault driver's insurance policy, exhausting that policy and thereby triggering Sidney's rights to collect underinsured motorist insurance from her insurer, Allstate.[24] Sidney's settlement with the at-fault driver's insurance company had designated $25,000 to be paid to her and $25,000 to be paid to her insurer to satisfy its medical payment subrogation lien.[25] Regarding Sidney's right to have her insurer pay a pro rata share of the attorney's fees expended to obtain this settlement, we held that Sidney's pursuit of that claim conferred a direct benefit on her insurer.[26] We reasoned that since $25,000 of the settlement satisfied Allstate's medical subrogation lien, and Allstate neither expended effort to collect that $25,000 nor objected to Sidney's efforts to obtain it, but rather retained the benefit, the equitable rationale of the common fund doctrine should apply.[27]

17. *Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 754 (Alaska 1996) (quoting *Boeing v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)).

18. 84 P.3d 418 (Alaska 2004).

19. *Id.* at 420–22.

20. *Id.* at 433 (quoting *Martinez v. St. Joseph Healthcare Sys.*, 117 N.M. 357, 871 P.2d 1363, 1365 (1994)).

21. *Id.*

22. *Id.*

23. 187 P.3d 443, 453–54 (Alaska 2008).

24. *Id.* at 446.

25. *Id.*

26. *Id.* at 454.

27. *Id.*

Therefore, in that case, we ruled that Allstate owed a pro rata share of the attorney's fees and costs expended in settling with the at-fault driver's insurance company.[28]

Contrary to O'Donnell's assertion, the discussion of *Ruggles* in the *Sidney* opinion confirms the essential holding of *Ruggles*.[29] We noted in *Sidney* that *Ruggles* allowed an insured injured party to include the subrogated claim in its claim against the tortfeasor *"if the insurer does not object."* [30] This is consistent with basic unjust enrichment principles, since a party who passively accepts a benefit can be held responsible for reimbursing the person who conferred the benefit under those principles.[31]

*Sidney* does not render the insurer's authorization "irrelevant," as O'Donnell argues. If the insurer actively requests that the plaintiff not pursue her subrogation claim, there is no common fund because the insurer will not be collecting the lien from the plaintiff's recovery fund but will seek its own recovery. Conversely, the plaintiff may not collect the subrogated amount or attorney's fees on that amount, whether from her own insurer or from the defendant. In *Sidney*, the insurer did not take any action, but passively accepted the conferred benefit.[32] Most jurisdictions agree that if an insurer chooses not to rely on the services of plaintiff's counsel and provides notice of this, there is no benefit conferred and no unjust enrichment, and thus the common fund rule does not apply.[33]

### 2. The made-whole doctrine does not apply to this case.

O'Donnell also argues that *Sidney* implicitly recognized equitable doctrines such as the made-whole doctrine, or, if it did not, we should now apply that doctrine to this case and overrule *Ruggles*. We disagree that the made-whole doctrine has any bearing on this case or was at all relevant to *Sidney*.

The made-whole doctrine recognizes that there may be situations in which a defendant's policy would be exhausted and the injured party would be left without being fully compensated for her own loss if her insurer collected the subrogation lien before she was herself compensated for her separate damages.[34] This issue is not before the court now because O'Donnell was fully compensated. The made-whole doctrine was also not an issue in *Sidney* because of her underinsured motorist protection.[35]

### 3. The promise that Allstate would pay common fund money is irrelevant.

Finally, O'Donnell makes the claim that the Johnsons' attorney "repeatedly promised the trial court that any common fund monies owed to Ms. O'Donnell would be paid by Allstate," implying that therefore Allstate has incurred a liability. But Allstate's attorney merely stated that, if any common fund money were owed, Allstate would pay it rather than the Johnsons. Because we have held that no common fund money is owed, the promise is inapplicable.

### C. The Superior Court Did Not Err in Ruling that O'Donnell Was Not Entitled to Post-judgment Interest After November 23, 2007.

Final judgment in this matter was entered on November 11, 2007. Allstate

**28.** *Id.*

**29.** *Id.*

**30.** *Id.* (quoting *Ruggles v. Grow*, 984 P.2d 509, 512 (Alaska 1999) (emphasis added) ).

**31.** *See, e.g., Alaska Native Tribal Health Consortium v. Settlement Funds Held for or to be Paid on Behalf of E.R. ex rel. Ridley*, 84 P.3d 418, 432 (Alaska 2004) (holding that passive beneficiaries required to bear fair share of costs). Appellees complain that the court in *Sidney* "appears to have assumed that Sidney had authority to collect" but that seems to miss one of the main points of the common fund doctrine, which is that express authorization is not required if the party charged with sharing the fees passively accepted a benefit.

**32.** 187 P.3d at 453–54.

**33.** *See, e.g., Richter, Wimberley & Ericson, P.S. v. Honore*, 29 Wash.App. 507, 628 P.2d 1311, 1313–14 (1980); *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587, 590 (Tenn.1976).

**34.** LEE R. RUSS, 16 COUCH ON INSURANCE § 223:134 (2008).

**35.** *See* 187 P.3d 443, 445–46 (Alaska 2008).

mailed O'Donnell a check for the amount of the judgment, which included post-judgment interest through November 23, 2007. That check was received by O'Donnell's attorney on November 20, 2007. O'Donnell's attorney notified the Johnsons' counsel by letter on November 21, 2007 that he had received the check but that the Johnsons owed another $296 because the November 20 check and the Johnsons' personal funds seized and held by the court registry did not cover the one-third of the State Farm satisfaction to which O'Donnell now claimed to be entitled. On December 14, 2007, O'Donnell's attorney mailed the check back to Allstate. The Johnsons prevailed on a motion to compel O'Donnell to accept the check on February 12, 2008.

Under *Farnsworth v. Steiner*,[36] an appellant may be entitled to post-judgment interest where she was not paid during the pendency of her appeal regardless of responsibility for that delay.[37] However, payment to O'Donnell was not delayed here. O'Donnell had the check in her possession for twenty-five days and then chose to return it; the Johnsons' attorney then had to expend additional resources to get her to accept it. We held in *Providence Insurance Co. of Alaska v. Fireman's Fund Insurance Cos.*[38] that the common law definition of when payment is tendered should guide the determination of when post-judgment interest accrual is tolled.[39] At common law, tender required that "the thing actually be produced and made available for acceptance and appropriation by the person to whom it is offered."[40] Here, the Johnsons did tender payment to O'Donnell on November 20, 2007, and no post-judgment interest should accrue after that payment.

## V. CONCLUSION

Because no common fund money or attorney's fees are owed O'Donnell under the plain language of the offer of judgment or under *Ruggles v. Grow*, and because the Johnsons in fact paid O'Donnell before the deadline set in the final judgment and therefore owed no additional post-judgment interest, we AFFIRM the decision of the superior court in all respects.

36. 638 P.2d 181 (Alaska 1981).

37. *Id.* at 185.

38. 778 P.2d 200 (Alaska 1989).

39. *Id.*

40. *Id.* at 204.