Charles Gary MILLER, Appellant,

v.

HANDLE CONSTRUCTION
COMPANY, Appellee.

No. S–13426.

Supreme Court of Alaska.

July 22, 2011.

Patrick B. Gilmore, Atkinson, Conway & Gagnon, Anchorage, for Appellant.

Timothy C. Verrett, Law Offices of Timothy C. Verrett, PC, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

A landowner contracted with a manufacturer to purchase a pre-fabricated steel hangar. In a separate agreement, the landowner contracted with a construction company to erect the steel hangar on his land. After completing its work, the construction company sued the landowner for unanticipated costs it incurred as a result of manufacturing defects in the pre-fabricated hangar. The landowner made an $18,000 offer of judgment, which the construction company accepted. But when the construction company received a separate payment from the manufacturer, the landowner refused to pay the full $18,000, arguing that an offset was warranted. The superior court rejected the landowner's argument, ordering him to pay the full amount of the offer. Because the basis for the superior court's decision is un-clear, we reverse and remand for additional factual findings.

## II. FACTS AND PROCEEDINGS

Gary Miller is the lessee of a tract of land at Lake Hood. Planning to develop his land into a hangar facility, Miller purchased a pre-fabricated steel hangar building from VP Buildings (VP).[1] Miller then entered into a contract with Handle Construction Company for Handle to erect the hangar and perform other services relating to the hangar's construction.

In assembling the building, two costly defects in the pre-fabricated hangar became apparent. First, a paint-related defect caused rust damage. Second, an entirely separate defect relating to the steel caused Handle to incur more costs than it had anticipated in erecting the building. Handle claimed that the additional costs arising out of the steel defect amounted to $13,000. The hangar manufacturer, VP, acknowledged the steel defect, but claimed that the damages were only around $6,000. Miller also believed that the damages were less than Handle alleged.

Because both VP and Handle had contracted with Miller, but not with each other, Miller found himself in the position of a middleman with respect to the additional costs Handle had incurred as a result of the steel defect. Handle could not directly recover from the manufacturer VP; rather, Handle would have to assert a claim against Miller, who would in turn have to seek recovery from VP. Because Miller was reluctant to advocate for the higher amount of damages Handle alleged, and because he believed that Handle was in a better position to explain its claim, Miller authorized Handle to negotiate directly with the manufacturer as to the amount owed.

It appears that both Miller and Handle understood the scope of this granted authority to be quite narrow, consisting exclusively of the power to negotiate, and not the power to collect payment on Miller's behalf. Miller stated in an affidavit that he never assigned

1. During the relevant time period of this case, VP's agent was Superstructures. We refer to both entities as "VP."

Handle his contractual rights against VP. The superior court echoed this in its findings, stating that Handle had no contractual relationship with VP and, thus, could not independently assert a claim against VP. An email that Handle sent to Miller in May 2008 suggests that Handle shared this understanding of the authority it had been granted. Handle wrote:

> Please understand that our contract is with you, not with [VP]. In an attempt to help you secure payment from [VP], I have forwarded all of the information.... Although, the bottom line is, we expect payment from you whether you receive payment from [VP] or not.

Thus, it appears that both parties understood that Handle's negotiating authority did not encompass the power to independently recover from VP.

In March 2008, Handle recorded a lien against Miller's leasehold in the amount of $39,600.11, plus interest, costs, and attorney's fees. This amount included the alleged $13,000 "backcharges" caused by the steel defect, which was in addition to other unrelated damages that Handle argued Miller owed. In June, Handle filed a complaint against Miller seeking recovery of the entire amount of the lien. The following month VP—which was not a party to the pending litigation—offered to pay Handle $5,900 as compensation for the additional costs it incurred related to the steel defect. On the same day, VP also offered to pay Miller $9,502. While Handle took no immediate action on its offer, Miller accepted his offer almost immediately. Although both Handle and VP later asserted that the $9,502 settled *all* of Miller's claims against VP, the superior court found that it was solely for the "paint/rust claim" and Handle does not appeal this finding.

In September, Miller made a Civil Rule 68 offer of judgment to Handle in hopes of settling Handle's lawsuit. Miller's offer stated that it was

to allow judgment to be entered against him in complete satisfaction of Plaintiff's claims. This offer is in the principal amount of EIGHTEEN THOUSAND DOLLARS ($18,000.00), plus attorney's fees computed to the Civil Rule 82(b)(1) schedule (contested without trial), plus costs computed pursuant to Civil Rule 79, plus prejudgment interest.

Several days after Miller made this offer, Handle's attorney asked Miller's attorney if the offer included an amount for the claim that Handle had concerning the steel defect. Miller's attorney said that it did and that Miller intended to collect the $5,900 VP had offered,[2] to which Handle's attorney replied that the offer was probably too low.

At no point did Miller revoke the authority he had granted Handle to negotiate directly with VP. On October 2, Handle informed VP that it would accept the offer of $5,900. The following day, Handle accepted Miller's $18,000 offer of judgment.

A week later, Miller's attorney wrote to Handle's attorney regarding Handle's acceptance of both offers. Miller's attorney stated that the $5,900 from VP was rightfully Miller's, and reiterated that Miller had intended the offer of judgment to settle the steel defect claim. Therefore, he explained, the amount that Handle had collected from VP would be credited against Miller's $18,000 offer of judgment. Handle's attorney responded by insisting that Miller had not conditioned the offer of judgment on an offset and that, as a result, Handle expected full payment from Miller. When Miller declined to pay the full amount, Handle filed a motion for entry of judgment upon confession, based upon Miller's Rule 68 offer and Handle's acceptance of the offer.

Miller opposed the motion. The superior court held oral argument, but did not hold an evidentiary hearing. In its order on Handle's motion, the superior court rejected all of Miller's arguments, finding that the offer of judgment did not entail an offset under these circumstances and that Handle's accep-

**2.** While the superior court did not specifically find that Miller's attorney informed Handle's attorney of Miller's intention to collect the $5,900, both parties acknowledged this fact in their re-

spective pleadings: Handle in its memorandum in support for entry of judgment and Miller in his opposition to that motion.

tance was not voided by unilateral mistake. The court made no findings as to whether the $5,900 Handle accepted from VP actually belonged to Miller. The court entered judgment against Miller, ordering him to pay the full $18,000, plus attorney's fees, costs, and pre-judgment interest.

Miller appeals.

## III. STANDARD OF REVIEW

█ We interpret an accepted offer of judgment according to our independent judgment.[3] We review questions of law de novo.[4]

## IV. DISCUSSION

Miller argues that the superior court erred in finding that the circumstances did not warrant an offset of the judgment. First, he argues that Handle's acceptance of both offers amounts to a double recovery and, therefore, the offer of judgment should be reduced by the $5,900 that Handle collected from VP. Second, he asserts that the words of the offer itself—which he argues unmistakably implied that Handle could not accept both offers— necessitate such an offset, especially when interpreted in light of the cross-counsel communications that occurred after Miller made his Rule 68 offer. Finally, he argues that if the agreement does not entail an offset, it is unenforceable.

Because the superior court made no findings as to whether the $5,900 Handle accepted from VP was rightfully Miller's, we are unable to evaluate the bulk of Miller's arguments on appeal, and remand to the superior court for an evidentiary hearing.

### A. The Judgment Need Not Be Reduced By $5,900 In Order To Prevent Double Recovery.

█ Miller argues that allowing Handle to keep both the $18,000 judgment and the $5,900 from VP gave Handle a double recovery for the steel defect claim, and that we must reduce the $18,000 judgment by the amount that Handle collected from VP to prevent this double recovery. Miller cites no law in support of his argument.

Handle correctly asserts that we specifically held in *Rules v. Sturn*[5] that double recovery arguments like Miller's do not apply in the Rule 68 context. In *Rules,* we addressed a similar set of facts. Rules operated a truck that collided with Sturn's automobile.[6] Some time after Sturn filed a personal injury claim against Rules, Rules made a Rule 68 offer of judgment that stated: "defendants ... do hereby offer to allow judgment to be entered herein for plaintiffs ... and against defendants in the amount of $11,000.00 to which may then be added appropriate sums for prejudgment interest, costs of suit incurred to date and an attorney's fee...." [7] Although the offer specified a definite sum and made no mention of any offset, Rules's attorney informed Sturn's attorney in a conversation, which occurred *after* the offer was made but prior to its acceptance, that the judgment would be reduced by the sum of advance payments that Rules had made to cover Sturn's medical treatment in the years since the collision.[8] Despite Sturn's disagreement with this proposition, the check that Rules delivered to Sturn was for the reduced amount.[9] The superior court denied Rules's motion to have satisfaction of judgment entered for that reduced sum.[10]

On appeal, Rules argued that allowing Sturn to keep both the full amount of the judgment and the advanced medical payments would result in a double recovery.[11] We rejected Rules's double recovery argument:

**3.** *Pagenkopf v. Chatham Elec., Inc.,* 165 P.3d 634, 638 (Alaska 2007).

**4.** *Stewart v. Elliott,* 239 P.3d 1236, 1239 (Alaska 2010) (citing *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* 177 P.3d 1181, 1184 (Alaska 2008)).

**5.** 661 P.2d 615 (Alaska 1983).

**6.** *Id.*

**7.** *Id.* at 615–17.

**8.** *Id.* at 617–18.

**9.** *Id.*

**10.** *Id.* at 616.

**11.** *Id.*

The doctrine prohibiting multiple recovery is relevant only where it is known what amount of money or property constitutes compensation. . . . In a particular case, what constitutes compensation is known only after a trial on the merits of the issue.

The purpose of Civil Rule 68 is to encourage settlement in civil cases and to avoid protracted litigation. In an attempt to reach a settlement, a defendant is not bound under Civil Rule 68 to make an offer of judgment commensurate with any degree of compensation.

Therefore, we find that it makes little sense to speak of multiple recovery since Civil Rule 68 does not place any burden on a defendant to extend an offer of judgment which is related to compensation. Moreover, an amount constituting appropriate compensation has not been determined in this case.[12]

The same reasoning applies here. As we held in *Rules*, because the purpose of the prohibition against multiple recovery is to prevent *over*-compensation, it does not apply in a Rule 68 context, where there is no guarantee that the offer of judgment reflects the actual amount of compensation warranted.

### B. We Are Unable To Assess Miller's Remaining Arguments Because Of The Lack Of Factual Findings.

Miller's remaining arguments assume that the $5,900 Handle collected from VP was rightfully Miller's. The parties disputed this issue in the proceedings below. Handle argued that the $9,502 VP paid Miller settled *all* of Miller's claims against VP, and therefore, Miller had no right to the $5,900 that VP eventually paid Handle. Handle pointed to the explicit terms of the settlement agreement and submitted a VP representative's affidavit stating that following Miller's acceptance of the $9,502, he was entitled to no further compensation from VP. Miller submitted his own affidavit to the court asserting that the $9,502 he collected from VP was solely for the paint-defect claim, and that the remaining $5,900, in payment for the steel defect claim, was rightfully his.

The superior court did not hold an evidentiary hearing. Although the superior court stated that the $9,502 was for the "paint/rust claim," it made no findings as to whether the remaining $5,900 was rightfully Miller's.[13] The superior court held that the offer of judgment did not entitle Miller to an offset and that Miller was required to pay Handle the full offer of judgment amount; thus, the superior court apparently concluded that the disputed issue was not material. We disagree, and remand to the superior court for an evidentiary hearing.

The central issue in this case is the meaning of the accepted offer of judgment. Specifically, we must determine whether the accepted offer warrants an offset in these circumstances. Rule 68 allows a party to make an offer of judgment "[a]t any time more than 10 days before the trial begins."[14] The purpose of the rule is "to encourage settlement in civil cases and to avoid protracted litigation."[15] A Rule 68 offer of judgment "must specify a definite sum and must be unconditional,"[16] and once the offer of judgment has been served, the offeror cannot modify or revoke it for ten days.[17] Because "[a]n offer of judgment and acceptance thereof is a contract,"[18] we interpret an accepted offer of judgment using our independent judgment and applying the rules of contract interpretation.[19]

"The goal of contract interpretation is to give effect to the parties' reasonable

12. *Id.* (citations omitted).

13. On appeal, Handle refers to "VP's willingness to kick in an additional $5,900," with no discussion of who owned the money.

14. Alaska R. Civ. P. 68(a).

15. *Rules*, 661 P.2d at 616 (citing *Cont'l Ins. Co. v. U.S. Fid. & Guar. Co.*, 552 P.2d 1122, 1125–26 (Alaska 1976)).

16. *Turner v. Municipality of Anchorage*, 171 P.3d 180, 187 (Alaska 2007) (quoting *Davis v. Chism*, 513 P.2d 475, 481 (Alaska 1973)).

17. *White v. Harvey*, 979 P.2d 1012, 1013 (Alaska 1999) (citing *LaPerriere v. Shrum*, 721 P.2d 630, 634–35 (Alaska 1986)) (internal quotation marks omitted).

18. *Davis*, 513 P.2d at 481.

19. *O'Donnell v. Johnson*, 209 P.3d 128, 131 (Alaska 2009).

expectations...."[20] "The parties' expectations must be gleaned not only from the contract language, but also from extrinsic evidence, including evidence of the parties' conduct, goals sought to be accomplished, and surrounding circumstances when the contract was negotiated."[21] Thus, in order to ascertain the meaning of Miller's accepted offer of judgment, we must determine the parties' reasonable expectations by considering the offer's express terms in light of extrinsic evidence.

### 1. Post-offer extrinsic evidence is not relevant.

█ As a preliminary matter, we reject Miller's argument that the offer of judgment should be interpreted in light of the communications his attorney had with Handle's attorney *after* the offer was made. Again, *Rules v. Sturn*[22] controls. There, we rejected the argument that even though the offer of judgment's terms made no mention of an offset, an offset was implied in light of the post-offer cross-counsel communication expressing the intent that the judgment be reduced by the sum of advance payments made in the years since the collision.[23] We stated that the offer would be subject to an offset if "the words in the offer of judgment, when interpreted in light of all the surrounding circumstances, reasonably require[d] such a finding."[24] However, because Rule 68 offers are irrevocable for ten days and then automatically withdrawn,[25] we concluded that extrinsic evidence that comes into being *after* the offer is made is irrelevant to the offer's meaning.[26]

█ The same rule applies here. Because the only extrinsic evidence a court can look to in interpreting an offer of judgment is that which existed at the time the offer was made, the post-offer communications expressing Miller's intent to collect the $5,900 from VP are irrelevant to the accepted offer of judgment's meaning. Miller contends that *Rules* only precludes post-offer extrinsic evidence that *modifies* the offer, and does not prevent courts from looking to post-offer extrinsic evidence to determine the offer's meaning. We disagree. We stated in *Rules* that "the extrinsic circumstances to which one can refer to determine the meaning of [an] offer [of judgment] should be those existing at the time the offer is made."[27] We did not distinguish between modification and clarification there, and we decline to do so here.

Miller goes on to argue that an offset is warranted because, as a result of the post-offer communications, Handle knew that Miller intended to collect the $5,900 from VP. It is true that when one party knows or has reason to know that the other party attaches a different meaning to the contract, the contract is interpreted in accordance with the second party's meaning.[28] But in this case, the extrinsic evidence giving rise to Handle's knowledge of Miller's intended meaning came into being after Miller made his offer. It is therefore irrelevant to our interpretation of the agreement.[29] Consequently, we reject this argument, and focus exclusively on the extrinsic evidence that existed at the time Miller made his offer.

### 2. Whether an offset is warranted in these circumstances depends on whether the $5,900 was rightfully Miller's.

█ Miller argues that even if post-offer extrinsic evidence is not taken into account,

20. *Matanuska Elec. Ass'n, Inc. v. Chugach Elec. Ass'n, Inc.*, 99 P.3d 553, 562 (Alaska 2004) (citing *Stepanov v. Homer Elec. Ass'n, Inc.*, 814 P.2d 731, 734 (Alaska 1991)).

21. *Beal v. McGuire*, 216 P.3d 1154, 1162 (Alaska 2009) (citing *Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 502 (Alaska 1995)).

22. 661 P.2d 615 (Alaska 1983).

23. *Id.* at 617–18.

24. *Id.* at 617.

25. Alaska R. Civ. P. 68(a).

26. *Rules,* 661 P.2d at 618–19 & n. 4.

27. *Id.* at 618 n. 4.

28. *Sprucewood Inv. Corp. v. Alaska Hous. Fin. Corp.*, 33 P.3d 1156, 1163 n. 21 (Alaska 2001) (quoting 5 MARGARET N. KNIFFIN, CORBIN ON CONTRACTS § 24.5, at 15 (rev. ed. 1998)).

29. *See supra* notes 26–27 and accompanying text.

the offer of judgment requires an offset in these circumstances. We agree that the accepted offer of judgment would warrant an offset if the $5,900 was, indeed, Miller's money; however, because that remains a disputed issue of material fact, we remand to the superior court for an evidentiary hearing.

In his Rule 68 offer of judgment, Miller offered to pay $18,000 plus add-ons "in complete satisfaction of Plaintiff's claims." As Miller argues on appeal, this implies that Miller intended the $18,000 to settle *all* of Handle's claims against him, including the claim arising out of the steel defect. The superior court held that these circumstances did not warrant an offset because Miller failed to include an express offset term. But the superior court failed to acknowledge the terms that every offer of judgment *implies*. When a party makes a Rule 68 offer, he implicitly expresses his willingness to give up a specific amount of his own money in exchange for certainty that this is the *only* amount he will lose going forth with respect to the claims at issue. This exchange is the essence of settlement. When Miller offered $18,000 "in complete satisfaction of Plaintiff's claims," he reasonably expected that Handle's acceptance would guarantee that this was the only amount of Miller's money Handle would receive for this set of damages after the offer was made.[30]

If the $5,900 was Miller's money, then it was unreasonable as a matter of law for Handle to expect that it could both accept the offer of judgment *and* retain the $5,900 it accepted from VP on Miller's behalf. Miller did not need to include express language to that effect; if the $5,900 was indeed Miller's, this conclusion follows from the offer's implied terms, and an offset would be warranted. However, if the $5,900 was not rightfully Miller's, then Handle's acceptance of both the offer of judgment and the $5,900 would not be inconsistent with the implied terms

described above, and the agreement would not entail an offset.

## V. CONCLUSION

Because the superior court's factual findings are insufficient, we are unable to determine whether the accepted offer of judgment warrants an offset in these circumstances. We REMAND to the superior court for an evidentiary hearing to determine whether the $5,900 was rightfully Miller's money.

CHRISTEN, Justice, with whom CARPENETI, Chief Justice, joins, dissenting.

I write separately to express my disagreement with the court's decision to remand to the superior court for a finding on whether the $5,900 paid by VP to Handle was rightfully Miller's money.

In my view, the uncontested facts known to the parties when Miller made his offer of judgment clearly establish that the VP payment belonged to Miller. It is uncontested that Handle was never in privity of contract with VP, and Handle's counsel confirmed at oral argument that Handle never brought a claim against VP. Indeed, Handle went out of its way to communicate that its contract was with Miller and that it would look to Miller to satisfy its claim for cost overruns. In addition, although Miller enlisted Handle as the appropriate agent to negotiate the rust and steel defect claims with VP—an entirely reasonable step in light of Handle's first-hand knowledge of the construction process—Handle has not alleged that Miller ever agreed or even suggested that Handle could keep the settlement it negotiated with VP. These facts are part of the extrinsic evidence that must be considered in determining the parties' reasonable expectations regarding the settlement offer.[1] With no contract or claim existing between Handle and VP, the circumstances show that both Miller and Handle

---

30. This is a fundamental difference between the current case and *Rules v. Sturn.* There, the offeror Rules argued that the offer of judgment should be offset by the amount of money he had paid Sturn *before* making the offer. *Rules,* 661 P.2d at 617. Here, the offset at issue represents money Handle collected *after* Miller extended the offer of judgment.

1. *See Beal v. McGuire,* 216 P.3d 1154, 1162 (Alaska 2009) (citing *Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.,* 895 P.2d 497, 502 (Alaska 1995)); *Rules v. Sturn,* 661 P.2d 615, 617 (Alaska 1983) (interpreting offer of judgment in light of surrounding circumstances).

understood Miller's settlement offer to have been premised on the assumption that Handle had no claim to direct reimbursement from VP and would be required to turn over any recovery to Miller. Thus, I believe that this case need not be remanded for a finding that addresses whether the $5,900 was Miller's money. I would reverse the superior court's decision, hold that Miller was entitled to an offset for Handle's recovery from VP, and remand for entry of judgment in Miller's favor. For these reasons, I respectfully dissent.