*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| PAIGE M. BEST,<br><br>               Appellant,<br><br>v.<br><br>FAIRBANKS NORTH STAR<br>BOROUGH,<br><br>               Appellee. | Supreme Court No. S-17734<br><br>Superior Court No. 4FA-18-02037 CI<br><br>O P I N I O N<br><br>No. 7550 – August 20, 2021 |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Thomas I. Temple, Judge.

Appearances: Ward Merdes, Merdes Law Office, P.C., Fairbanks, for Appellant. Wendy M. Dau and Ehren D. Lohse, Assistant Borough Attorneys, and Jill S. Dolan, Borough Attorney, Fairbanks, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

A minor was severely injured in an all-terrain vehicle collision in which the other driver was at fault. The minor had medical benefits coverage through a health care plan provided by her father's employer, the Fairbanks North Star Borough. As allowed by the terms of the plan, the Borough refused to pay the minor's medical bills until she

signed an agreement that included a waiver of certain defenses to the Borough's subrogation rights, such as the common fund and made-whole doctrines. The minor refused to sign the agreement without reservation and filed suit, seeking a declaration that the Borough could not condition payment of her medical bills on her signature. The superior court decided on summary judgment that the Borough's health care plan was not a true insurance plan and that, regardless of whether it was interpreted as an insurance policy or an ordinary contract, the parties could lawfully reject subrogation defenses. The minor appeals.

We hold that the health care plan is a bargained-for employee benefit rather than a true insurance policy and that the superior court's interpretation of it was correct. We therefore affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

In April 2017 Paige Best was severely injured in an accident involving two all-terrain vehicles at Arctic Man.[1] She was sitting on the rear rack of one ATV when it was rear-ended by another ATV. Best was thrown off her vehicle, required surgery to repair a broken hip, and ultimately incurred over $191,000 in medical bills.

At the time of the accident Best was "a covered health plan participant" in Fairbanks North Star Borough's Health Benefit Plan #P62 (the plan) because of her

---

[1] Arctic Man is a week-long festival held each spring in the Hoo Doo Mountains near Milepost 197.5 of the Richardson Highway. ARCTIC MAN *2017 Program*, 1, 11, https://www.arcticman.com/images/pdf/AMAN_2017_PROGRAM.pdf. Centered around a snowmachine and ski race, the festival also features music and drinking. An estimated 12,000 people attend each year, making the event temporarily one of Alaska's largest settlements. Laura Carpenter, *Arctic Man: The Anti-Burning Man Draws 'Slednecks' To Remote Alaska*, GUARDIAN (Apr. 24, 2016), https://www.theguardian.com/us-news/2016/apr/24/arctic-man-burning-man-festival-alaska-ski-snowmobile-race.

father's employment by the Borough. The plan includes two provisions relevant to this appeal.

The first is the third-party liability provision. It excludes coverage when a third party is liable for the loss. It also provides, however, that the plan may "as a convenience" advance a payment to cover expenses in such situations as long as the participant signs and returns a Subrogation and Reimbursement Agreement (subrogation agreement):

> A third party may be liable or legally responsible for expenses incurred by you or a Dependent for a health condition. *The plan does not provide benefits for an injury, accident or illness to the extent for which there is or may be a recovery against a third party.* However, if you or your Dependent has medical expenses as a result of an injury, accident or illness for which a third party is or may be held responsible, the plan, as a convenience to you or your Dependent, may advance payment of such expenses on the condition that you or your [D]ependent and/or legal counsel, if any, sign and return a Subrogation and Reimbursement Agreement and provide any other information as requested by the plan. The plan may suspend benefits until such Agreement is fully executed and returned to the Claims Office along with all other requested information. [Emphasis in orignal.]

The second relevant provision to this appeal is the "100% First-Dollar Right of Recovery." This section grants the plan priority in any recovery from a third party for "benefits paid or to be paid under this plan" regardless of whether the recovery fully compensates the participant for the loss and regardless of whether the participant's recovery is for medical expenses:

> The plan has the right to recover or subrogate 100% of the benefits paid or to be paid under this plan that the claimant is entitled to receive from any third party and/or any other recovery source on a priority first-dollar basis, without

apportionment of value, reduction, or offset of any kind, whether by suit, settlement or otherwise, regardless of whether the total recovery amount is less than the actual loss suffered, and regardless of whether the recovery is described as being related to medical costs.

The subrogation agreement an injured participant is required to sign includes an express acceptance of these provisions, as well as an acknowledgment "that federal and/or state common law defenses [to subrogation] including, but not limited to, the made-whole doctrine and/or the common fund doctrine do not apply."[2]

Best asked that the plan pay for her medical care. The plan administrator sent Best the subrogation agreement to sign and return.

But Best did not sign the subrogation agreement and instead insisted that the Borough pay her medical expenses immediately; she asserted equitable defenses to subrogation and claimed that the plan could not legally condition coverage on her signature. She ultimately did sign the agreement — following months of correspondence between her attorney and the plan — but according to her attorney she did so only "[with] reservation"; she claimed she signed under duress and was reserving her equitable defenses to subrogation. The Borough responded that it could not advance payment for Best's expenses unless she consented to the subrogation agreement without reservation but that the offer to pay on the stated conditions would remain on the table.

---

[2] These doctrines subordinate an insurer's subrogation claim to the insured's interest in being fully compensated and the insured's attorney's interest in a reasonable attorney's fee. *O'Donnell v. Johnson*, 209 P.3d 128, 135 (Alaska 2009) (explaining that the made-whole doctrine addresses circumstance in which subrogation lien would result in insured being less than fully compensated); *Sidney v. Allstate Ins. Co.*, 187 P.3d 443, 454 (Alaska 2008) (explaining that common fund doctrine "provides that 'a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole' " (quoting *Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 754 (Alaska 1996))).

Best never signed the agreement without reservation. She asserts in her brief that she ultimately recovered some amounts in auto liability and uninsured motorist insurance, though our record does not provide further information about that recovery.

## B.    Proceedings

In June 2018 Best brought suit against the Borough, seeking damages for negligence and breach of contract as well as a declaration that the plan was required to pay her medical bills. In an amended complaint Best sought declarations that the Borough owed her "approximately $195K of health insurance coverage pursuant to" the plan and that the Borough's "efforts to contractually expand its rights by reducing its insureds' equitable subrogation defenses [are] contrary to Alaskan law and unenforceable."

After some discovery the parties filed cross-motions for summary judgment on whether the Borough was required to pay Best's medical bills. The superior court granted the Borough's motion and denied Best's, deciding that the Borough was not required to pay unless and until Best signed the subrogation agreement without reservation. First, relying on an affidavit from the State's Director of the Division of Insurance, the court decided that the plan was not insurance in the usual sense and was therefore not regulated by Title 21 of the Alaska Statutes. The court further ruled that the Borough would prevail even if the plan were interpreted under the principles we apply to insurance policy interpretation, because the plan's challenged provisions were clear, unambiguous, and consistent with an insured's reasonable expectations. The court concluded based on the plan's plain language that a reasonable insured would expect the plan's subrogation interest to take priority.

The court also addressed Best's two claimed defenses to subrogation: the common fund doctrine and the made-whole doctrine. The court concluded that the common fund doctrine did not apply because the Borough had made Best aware of its

intention to directly assert its own recovery against the third party, meaning that Best and the Borough did not share a fund from which Best's attorney should be compensated. As for the made-whole doctrine, the court concluded that it could be waived by clear and explicit contract language, and that the plan did so.[3]  Best appeals.

## III.  STANDARD OF REVIEW

"We review grants of summary judgment de novo."[4]  Contract interpretation presents questions of law which we review de novo using our independent judgment.[5]  We "adopt[] the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

## IV.  DISCUSSION

**A.  The Superior Court Correctly Ruled That The Plan Was Not Insurance And That Its Subrogation Provisions Were Clear And Unambiguous.**

Central to Best's argument is her contention that the plan is an insurance policy, and that as an insurance policy it must be interpreted more strictly in her favor than a more standard type of contract would be.  Generally, "[t]he purpose of contract interpretation is to [ascertain] and effectuate the reasonable expectations of the parties."[7]

---

[3]  The court rejected several other contract defenses as inadequately briefed, unsupported by case law, or irrelevant:  that the plan violated the principles of good faith and fair dealing, that the subrogation agreement was coercive, that subrogation would be a windfall to the Borough, and that the challenged plan terms were illusory.

[4]  *Ball v. Allstate Ins. Co.*, 426 P.3d 862, 865 (Alaska 2018).

[5]  *ResQSoft, Inc. v. Protech Solutions, Inc.*, 488 P.3d 979, 983 (Alaska 2021).

[6]  *Ball*, 426 P.3d at 865 (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008)).

[7]  *Stordahl v. Gov't Emps. Ins. Co.*, 564 P.2d 63, 65 (Alaska 1977).

But the "interpretation of insurance contracts is controlled by somewhat different standards" due to both the insured's lack of bargaining power and the insurer's need for certainty when setting premiums.[8] Insurance policy interpretation therefore favors the insured's perspective, as long as it is a reasonable one. An insurance contract is "construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language," and this construction does not depend on an initial finding that the policy language is ambiguous.[9]

The superior court accepted the Borough's argument that the plan was not insurance but was rather a bargained-for and self-funded employee benefit. We agree with the superior court's analysis and conclusion.

### 1.    The plan is not insurance.

Best argues that the Borough plan has all the characteristics typical of an insurance policy and should be interpreted as such, meaning that the superior court should have favored her reasonable expectations over the plan's express terms. To determine whether an agreement is insurance we look to the substance of the parties' relationship.[10] "Insurance is the assumption of another's risk for profit."[11] An insurer is thus paid for its promise that it will make payment upon the loss of something in which

---

[8]    *Id.*

[9]    *Id.* at 65-66; *see also United Servs. Auto. Ass'n v. Neary*, 307 P.3d 907, 910 (Alaska 2013) ("Ambiguities will be construed most favorably to the insured.").

[10]    1 STEVEN PLITT ET AL., COUCH ON INSURANCE § 1:8 (3d ed. 2020) ("The character of insurance is not to be determined by the . . . nomenclature used . . . but by the nature of the contract actually entered into.").

[11]    *Id.* at § 1:6.

the insured has an interest.[12]  On the other hand, an insured that retains its own risk of loss is a self-insurer.[13]  Insurance and self-insurance are much different concepts.[14]

Another characteristic of insurance contracts is the parties' unequal bargaining power.[15]  Insureds are offered a contract on a "take-it-or-leave-it" basis; premiums are not negotiated but rather are set so as to ensure that the insurer can profit from the relationship.[16]

It is true that the Borough's plan has some characteristics of insurance.  The Borough works with Aetna to provide a network of medical providers, uses a third-party plan administrator, and carries stop-loss excess insurance.[17]  But the plan is funded by the Borough and employee contributions; the risk of loss is not contracted out.  Contributions are not based on risk or set to cover the expected losses; according to the

---

[12]     *Id.*

[13]     *Id.* at § 10:1.

[14]     *See, e.g.*, *Fellhauer v. Alhorn*, 838 N.E.2d 133, 137 (Ill. App. 2005) ("[S]o-called self-insurance is not insurance at all.  It is the antithesis of insurance." (alteration in original) (quoting *Am. Nurses Ass'n v. Passaic Gen. Hosp.*, 471 A.2d 66, 69 (N.J. Super. App. Div. 1984), *aff'd in part, rev'd in part*, 484 A.2d 670 (N.J. 1984))); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. App. 2002) (noting that " 'self-insurance' is not insurance at all").  Federal law makes the same distinction.  Under the Employee Retirement Income Security Act (ERISA), self-funded employee benefit plans shall not be "deemed to be an insurance company or other insurer . . . for purposes of any law of any State purporting to regulate insurance companies."  29 U.S.C. § 1144(b)(2)(B) (2018); *see also* 1A PLITT ET AL., *supra* note 10, § 7:34.

[15]     *See Stordahl v. Gov't Emps. Ins. Co.*, 564 P.2d 63, 65 (Alaska 1977).

[16]     *Id.* at 65 n.4.

[17]     Under the stop-loss excess insurance, the Borough contracts with a third-party insurer to cover individual claims that exceed a certain dollar amount and to cover plan costs if in the aggregate they exceed a certain threshold.

Borough's risk manager, contributions make up "significantly less than 50 percent" of the "actuarial expense associated with the employee." The plan thus does not run at a profit or even come close to paying for itself; the Borough ultimately pays over 80% of the plan expenses. Best cites the fact that the plan is presented to Borough employees "as a pre-printed booklet" as evidence that it is "a classic adhesionary 'take it or leave it situation.' " But although Best did not bargain for the terms herself, they were negotiated on her behalf by union representatives.

In concluding that the plan was not insurance but rather "a bargained for employee health benefit," the superior court relied in part on the affidavit of Lori Wing-Heier, Director of the State's Division of Insurance. Wing-Heier attested that Title 21 of the Alaska Statutes, the state's insurance code, "does not apply to self-funded health benefit plans" "[e]xcept for self-funded multiple employer welfare arrangements regulated under Alaska Statutes 21.85." Best did not respond to this point in the superior court, but on appeal she contends that the Borough plan is a "multiple employer welfare arrangement," falling within the exception Wing-Heier noted.[18] Best contends that the plan satisfies this definition because the Borough and the Fairbanks North Star Borough School District are both parties to the plan and are separate employers. The Borough responds that it and the School District must be viewed as a single entity.[19]

---

[18]    *See* AS 21.85.500(5) (" 'multiple employer welfare arrangement' has the same meaning given in 29 U.S.C. 1002," which at subsection 37 defines "multiemployer plan" for ERISA purposes as "a plan (i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary may prescribe by regulation").

[19]    *See* AS 14.12.010(2) (providing that "each organized borough is a borough school district"); AS 29.35.160(a) ("Each borough constitutes a borough school district

(continued...)

As the Borough points out, because Best did not argue in the superior court that the plan was in fact a multiple employer welfare arrangement, the court lacked either the incentive or the factual record to decide the issue. In any event, Best gives us no basis on which to conclude that any specific provision of Title 21 would change our analysis even if the plan were a multiple employer welfare arrangement. The insurance code carefully distinguishes between insurance generally and self-funded plans such as multiple employer welfare arrangements,[20] and the stated purpose of the 2002 code amendments was to create a separately regulated framework for such alternatives.[21] Best directs us to nothing in Title 21 that, even if it applied to the Borough's plan, would require us to interpret the plan in a way that favors her position.

Because the Borough plan lacks the for-profit and adhesionary aspects typical of an insurance policy, the superior court properly interpreted it using the usual tools of contract interpretation rather than through the special lens that favors an insured.

---

[19]     (...continued)
and establishes, maintains, and operates a system of public schools on an areawide basis as provided in AS 14.14.060."); *Blue v. Stockton*, 355 P.2d 395, 397 (Alaska 1960) (deciding that "the school district and city is one and the same thing so far as corporate status is concerned").

[20]     *See, e.g.*, AS 21.85.020 (prohibiting "a self-funded multiple employer welfare arrangement" from using any name "descriptive of an insurer or insurance business); AS 21.85.100 (identifying sections of the code that apply to "self-funded multiple employer welfare arrangements").

[21]     H. Labor & Commerce Comm., Sponsor Statement of Proposed H.B. 246, 22d Leg., 2d Sess. at 1 (2002) (noting that the 2002 amendments to Title 21 would "establish[] a more appropriate regulatory structure for "multiple employer welfare arrangements," rather than the system at the time, in which they were "regulated as insurers"). H.B. 246 was passed and added a new chapter to Title 21 titled "Regulation of [Multiple Employer Welfare Arrangements]." Ch. 38, § 57, SLA 2002.

## 2.     Under the usual rules of contract interpretation, the plan's clear, unambiguous terms prevail.

Interpreting the plan as an ordinary contract, we give "primary effect to the language of the contract but also consider extrinsic evidence of 'the parties' intent at the time the contract was made.' "[22]   Best concedes that the plan's terms are "unequivocal" and "not ambiguous," and she offers no extrinsic evidence that would give the terms a different meaning.   Barring some other consideration, therefore, the challenged provisions are enforceable.

## B.     The Plan Did Not Unfairly Abrogate Best's Equitable Defenses To Subrogation.

The Borough's plan states that it "specifically disavows any federal or state common law defense including, but not limited to, the made-whole doctrine and/or the common fund doctrine."  The agreement Best was asked to sign reiterates this disavowal: "I understand that federal and/or state common law defenses including, but not limited to, the make whole doctrine and/or the common fund doctrine do not apply."  Best argues that the Borough's attempt to abrogate these defenses violates equity and public policy.  We consider each defense in turn.

### 1.     Common fund doctrine

Under the common fund doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[23]  "In the insurance context, where an injured plaintiff confers a benefit on his or her insurer by securing recovery for both,

---

[22]     *Beardsley v. Robert N. Jacobsen & Darlene F. Jacobsen Living Tr.*, 472 P.3d 500, 504 (Alaska 2020) (quoting *Norton v. Herron,* 677 P.2d 877, 880 (Alaska 1984)).

[23]     *O'Donnell v. Johnson*, 209 P.3d 128, 134 (Alaska 2009) (quoting *Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 754 (Alaska 1996)).

the insurer is liable for pro rata fees and costs based on what it recovers as a result of plaintiff's efforts."[24]

The common fund is not implicated in this case. Best never fully accepted the terms of the subrogation agreement, and the plan never made any payments related to the injury. Best's independent efforts to secure a recovery could not create a common fund because the Borough has no subrogation rights to pursue and no recovery to claim. Best is thus complaining about being asked to waive a defense that was not available to her in any event.[25]

Best suggests that we "may want to take another look at" a case in which we articulated the proposition that an insurer may instruct its insured not to pursue the subrogation claim on its behalf, thereby eliminating the prospect of a common fund recovery.[26] We do not address this argument. Because there is no common fund here, our cases establishing the common fund disclaimer rule are irrelevant to this dispute.

## 2. Made-whole doctrine

Best next alleges that the plan runs afoul of the made-whole doctrine, the rule that an insurer is not allowed to collect on its subrogated claim until the insured has been fully compensated for her loss. The superior court surveyed state and federal case law and ruled that "if the made-whole doctrine applies to contractual subrogation under

---

[24] *Id.*

[25] *Cf. Creekside Ltd. P'ship v. Alaska Housing Fin. Corp.*, 482 P.3d 377, 385 (Alaska 2021) (affirming superior court's determination "that waiver theory did not apply" when plaintiff "made no viable evidentiary showing" that it had the contract right it was claiming).

[26] Best asks us to revisit *Grow v. Ruggles*, 860 P.2d 1225 (Alaska 1993), but, as the Borough points out, Best likely intended to cite *Ruggles ex rel. Estate of Mayer v. Grow*, 984 P.2d 509, 511-13 (Alaska 1999), a later case that contains the relevant discussion.

Alaska law, it can be waived by a clear and explicit clause in the contract, such as is present in the Plan." We conclude that, assuming an insured has an equitable right to the benefit of the made-whole doctrine, the right need not be recognized by the Borough's plan because — as explained above — it is not insurance but a bargained-for, self-funded employee benefit, and the justification for the made-whole doctrine does not apply.

The made-whole doctrine is an equitable principle that "in the absence of contrary statutory law or valid contractual obligations to the contrary . . . it is only after the insured has been fully compensated for all of the loss that the insurer acquires a right to subrogation or is entitled to enforce its subrogation rights."[27] Best's briefing of the issue appears to conflate the doctrine with the antisubrogation rule — the principle that an insurer cannot seek subrogation from its own insured for claims arising from a covered risk.[28] But the antisubrogation rule is not synonymous with the made-whole doctrine and does not apply to this case.[29] The Borough is not attempting to recover against Best for a loss for which Best was liable.

We have twice discussed the made-whole doctrine but never decided whether it applies in Alaska. In *O'Donnell v. Johnson* we held that the made-whole

---

[27]    16 PLITT ET AL., *supra* note 10, § 223:134; *see also O'Donnell*, 209 P.3d at 135.

[28]    16 PLITT ET AL., *supra* note 10, § 224:4; *see Graham v. Rockman*, 504 P.2d 1351, 1356 (Alaska 1972) ("It is well settled that an insurer cannot recover by means of subrogation against its own insured.").

[29]    *See Maynard v. State Farm Mut. Auto. Ins. Co.*, 902 P.2d 1328, 1332 (Alaska 1995) ("[T]he rule prohibiting subrogation against one's own insured . . . involve[s] situations in which the insurer paid out on a loss to its insured and then sought to hold a second coinsured party under the same insurance contract liable for the loss.").

doctrine did not apply because the insured was found to have been fully compensated.[30] In *McCarter v. Alaska National Insurance Co.* we upheld a statute that required a worker's compensation beneficiary to reimburse his employer for damages recovered against a third party, even though the worker had not yet been fully compensated for his injuries.[31] We held that even if equitable subrogation defenses applied, they were restricted by the unambiguous language of the statute.[32] Thus the status of the made-whole doctrine in Alaska law remains undetermined.

But we need not decide whether to adopt the doctrine in this case either, because the justification for the doctrine is absent. The doctrine is based on the idea that the "burden of loss should rest on the party paid to assume the risk, and not on an inadequately compensated insured, who is the least able to shoulder the loss."[33] As described above, the Borough is not a true insurer, but rather a self-insurer that provides a benefit to its employees at a loss. The Borough was not required to recognize the made-whole doctrine as a defense to subrogation, and its plan unambiguously disallowed it. The superior court was therefore correct to conclude that the doctrine did not apply to Best's claim.

C.    **Best's Remaining Arguments Are Waived Or Otherwise Without Merit.**

Best makes several other arguments that we address briefly. First, she argues that the Borough, a state actor, deprived her of due process by not providing a hearing before requiring her to waive her defenses to subrogation. Best identifies only

---

[30]    209 P.3d at 135.

[31]    883 P.2d 986, 989-91 (Alaska 1994).

[32]    *Id.* at 990.

[33]    16 PLITT ET AL., *supra* note 10, § 223:136.

one terse and undeveloped mention of due process in the superior court, where her argument on summary judgment about coercion and duress included the words "No due process. No hearing." But a due process argument that is not sufficiently raised in the trial court is waived,[34] and we conclude that Best's bare mention of the phrase was not sufficient to alert the superior court or the Borough that Best considered it to be a serious issue.

Second, Best interweaves public policy concerns with her argument that the Borough should not be allowed to abrogate by contract her equitable defenses to subrogation. "A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."[35] The interests to be weighed include "the parties' justified expectations, any forfeiture that would result if the term were not enforced, and whether there is any special public interest in enforcing the term."[36]

Best does not identify any law that would make the plan's challenged provisions unenforceable. The only case law she cites is a decision of the Alabama Supreme Court that was later overruled.[37] More importantly, Best failed to brief this

---

[34] *Conkey v. State, Dep't of Admin., Div. of Motor Vehicles*, 113 P.3d 1235, 1237 n.6 (Alaska 2005).

[35] *Pavone v. Pavone*, 860 P.2d 1228, 1231 (Alaska 1993) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 178(1) AM. LAW INST. (1981)).

[36] *Id.*

[37] *Powell v. Blue Cross & Blue Shield of Ala.*, 581 So. 2d 772, 777 (Ala. 1990), *overruled by Ex parte State Farm Fire & Cas. Co.*, 764 So. 2d 543, 546 (Ala. 2000) (reaffirming pre-*Powell* rule "that, while the doctrine of subrogation is of purely equitable origin and nature, it may be modified by contract" (quoting *Int'l*

(continued...)

issue in the superior court, affording the Borough and the court no opportunity to develop a record relevant to the required interest-weighing process. Best mentioned public policy only once, in passing, as precluding the Borough from "employing [the] strong-arm tactic" of conditioning the payment of medical expenses on Best's signing of the subrogation agreement. She asked the superior court to order the Borough to pay her medical bills at once and to save for later motion practice the question of whether the Borough was permitted to "nullify state law subrogation defenses." She thus never made — or asked the court to reach — the argument she is making here: that the plan's terms were void because of public policy.

The superior court mentioned Best's public policy reference in its summary judgment order, apparently interpreting it as subsumed in her arguments about fiduciary duties and the covenant of good faith and fair dealing. The court noted that Best did not "further elucidate" the issue. Because it would be "both unfair to the trial court and unjust to the opposing litigant" to allow Best to introduce the issue on appeal,[38] we conclude that any public-policy-based argument is waived.

Finally, Best argues that genuine issues of material fact precluded summary judgment on her economic duress claim. In order to survive summary judgment, the non-moving party must demonstrate a factual issue on each of the claim's elements.[39] An essential element of an economic duress claim is that "one party involuntarily

---

[37]    (...continued)
*Underwriters/Brokers, Inc. v. Liao*, 548 So. 2d 163, 165-66 (Ala. 1989))).

[38]    *Harvey v. Cook*, 172 P.3d 794, 802 (Alaska 2007) (quoting *In re Marriage of Walker*, 42 Cal. Rptr. 3d 325, 332 (Cal. App. 2006)).

[39]    *N. Fabrication Co. v. UNOCAL*, 980 P.2d 958, 960 (Alaska 1999).

accepted the terms of another."[40] It is undisputed that Best never accepted the Borough's terms; her refusal to sign the subrogation agreement without reservation is central to this suit. Given the absence of this essential element, summary judgment on the economic duress claim was appropriate.

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[40]    *Id.* (quoting *Zeilinger v. SOHIO Alaska Petroleum Co.*, 823 P.2d 653, 657 (Alaska 1992)).