NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JEANINE S., | ) |
| | ) Supreme Court No. S-18688 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-20-06572 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF ADMINISTRATION, DIVISION | ) |
| OF RETIREMENT AND BENEFITS, | ) No. 2060 – November 20, 2024 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: Jeanine S., pro se, Santa Fe, New Mexico, Appellant. Laura Wolff, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Henderson, and Pate, Justices. [Borghesan, Justice, not participating.]

## I. INTRODUCTION

A participant in the State health care plan unsuccessfully appealed a denial of benefits for her minor son through the administrator's internal appeals process. The participant then appealed to the State agency in charge of overseeing the health care

---

\* Entered under Alaska Appellate Rule 214.

plan, which ordered the insurer to pay the remainder of the claim but did not decide whether the initial claim denials were proper. Despite the agency's decision, the participant appealed to the superior court, seeking damages and alleging various contract and constitutional claims. The superior court affirmed the agency's decision, concluding that damages were not available under the plan and that the remaining claims were either moot or outside the scope of the administrative appeal. It awarded attorney's fees to the agency. Because the superior court correctly interpreted the plan, we affirm its orders upholding the agency's decision and awarding attorney's fees.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Jeanine S.[1] is a former State employee who was previously enrolled in the State's health care plan (Plan). The Plan is administered by Aetna but overseen by the Division of Retirement and Benefits. The Plan was the secondary insurer for Jeanine's minor son.

Jeanine's son has been diagnosed with a number of disorders, including autism spectrum disorder, and required residential treatment. In September 2017 he began treatment at a residential program in Utah; he remained there until May 2018.[2]

In March 2018 Aetna received claims from the program for the boy's treatment. After attempting to reach the program and leaving a voicemail, it denied the claims without having heard back from the facility. The letter denying the claims stated that "based on the terms of the member's benefit plan document. . . . [t]he requested service is not covered." The letter included the Plan's definition of "[r]esidential

---

[1]     We use an initial in lieu of her last name to protect the family's privacy.

[2]     The program is called Daniels Academy and describes itself as a "boys' boarding school [that] provides ongoing, residential treatment for Autism Spectrum Disorder in a safe, nurturing setting."

treatment facility (mental disorders)," listing fourteen criteria, but did not explain why the program did not meet the requirements.

Jeanine withdrew her son from the program in May 2018 after both primary and secondary insurers denied coverage. Because insurance coverage was denied, the family was billed nearly $100,000.[3] The primary insurer eventually covered the cost of treatment, with the exception of a $500 deductible.

In July 2018 Jeanine filed a timely Level I appeal to Aetna. She included additional information a month later, explaining that the primary insurer reversed its initial denial of claims. Aetna maintained its denial, stating that the requested service was not covered by the Plan. But the letter also stated: "You do not have to pay this. Part of this claim was denied, and the provider's contracted rate was reduced. This is because part of the inpatient stay could have been safely managed at a lower level of care."

In February 2019 Jeanine filed a Level II appeal to Aetna's external review organization. She pointed out that Aetna had not explained how it determined the treatment was not a covered service. The external reviewer upheld the denial of benefits, listing multiple inconsistent claim explanations, including: "Your claim is denied because information we requested from you or your health care provider was not received"; "We've already paid this"; and "This is not covered. Your stay did not meet the inpatient criteria. Your care could be provided without an inpatient stay."

## B.    Administrative Appeal

Jeanine obtained counsel and filed a Level III appeal with the Division of Retirement and Benefits (Division) in April 2019. She challenged Aetna's decision on the grounds that it provided inconsistent rationales for the denial and that the denial was

---

[3]    Jeanine asserted that the family had to refinance their home and take out loans to afford the bills and the related costs of travel to relocate their son to Alaska.

not supported by any evidence. She also claimed that Aetna had deprived her of due process by failing to produce documents, consider the information she provided, or contact the program or medical experts to determine whether it satisfied the criteria for a residential treatment facility.

The Division issued a decision in July 2019, requiring Aetna to pay the remaining $500 that had not been paid by the primary insurer. The Division's letter explained that Aetna's denial had been based on the primary insurer's initial determination that the treatment was not medically necessary,[4] stating that "[w]hen the AlaskaCare Plan is secondary, it accepts the primary plan's medical necessity determination." The Division then noted that there were several revised explanations of benefits (EOBs) from that insurer, showing that it had reprocessed and paid the claims, which demonstrated that the primary insurer had ultimately "deemed the services medically necessary." Because the primary insurer had paid the claims in full, with the exception of $500, the Division directed Aetna to pay that remainder. The Division concluded that because "the disputed claims are being reprocessed by Aetna, there is no longer an appealable issue; therefore, this appeal request has been closed."

Jeanine requested reconsideration in August, seeking a decision on all of the issues she had raised in her Level III appeal. She argued that the Division's decision was inaccurate and that she had been denied due process and was entitled to damages. The Division granted Jeanine's request for reconsideration but waited to issue a decision while the parties attempted to reach a settlement. When they failed to settle the dispute, the Division issued its decision in March 2020. It held that Aetna's payment of $500 resulted in 100% of the allowed expenses for the claim being paid, and there were no remaining eligible claims to be paid under the terms of the Plan.

---

[4] The Division admits on appeal that this statement was erroneous.

The Division noted that Aetna denied the claims because it was unable to determine whether the residential program met the Plan's criteria for coverage of a residential treatment facility. It focused on whether the program was "a school or educational service," which would restrict coverage, and noted that there had been no response to Aetna's attempt to contact the program. It also reviewed the documents Jeanine had submitted about the program and concluded that they were academic reports and provided no explanation about why the program differed from a school or educational service.

The Division determined that Jeanine had received all of the documents to which she was entitled under the terms of the Plan. It explained that she was not entitled to special damages or attorney's fees because the Plan specifically limited liability to "the actual cost of hospital fees and health services" and explicitly excluded claims for special damages. Finally, the Division granted Jeanine's request for recalculated EOBs.

### C.    Superior Court Appeal

Jeanine appealed to the superior court, arguing that the Division's decision was not supported by the evidence and failed to resolve the issues she raised in the Level III appeal, including contract and constitutional claims she attempted to raise after the Division issued its final decision. She requested that the court reverse the Division's final decision and award her the full amount of the denied medical claims, specific damages for financial hardships incurred due to the wrongful denial of claims, special damages for the harm done by removing her son from treatment, and costs and attorney's fees. The Division moved to dismiss the appeal, arguing that Jeanine had received a decision that was not adverse, her special damages claims were moot because she had obtained all relief to which she was entitled, and her new claims were beyond the scope of the administrative appeal.

The superior court determined that the appeal was not moot as to Jeanine's request for special damages but nonetheless concluded the Division did not err in denying special damages because the terms of the Plan did not cover consequential damages and those terms were not unconscionable. It held that her claims for breach of fiduciary duty, bad faith, equitable estoppel, and equal protection violations were not reviewable because they were not properly raised to the Division, and her remaining arguments were moot because she would not be entitled to any relief even if she prevailed.

The Division later moved for partial attorney's fees in the amount of $11,202, representing 20% of the fees incurred.[5] The court concluded that AS 09.60.010(c)(2)'s exception for public interest litigants who raise constitutional claims did not apply to Jeanine because she had sufficient economic incentive to bring the claims. Having found some of the fees charged were unreasonable, the court awarded the Division $7,329, representing 20% of the fees deemed reasonable.

Jeanine appeals, now representing herself.

## III. STANDARD OF REVIEW

"When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the board's decision."[6] We review questions of law de novo.[7] "When applying the de novo

---

[5] *See* Alaska R. App. P. 508(e)(4) (stating "the court shall award the prevailing party 20% of its actual attorney's fees that were necessarily incurred" in an administrative appeal taken under Alaska R. App. P. 601, unless an exception applies).

[6] *Fairbanks Gold Mining, Inc. v. Fairbanks N. Star Borough Assessor*, 488 P.3d 959, 965 (Alaska 2021) (internal quotation marks omitted) (quoting *Horan v. Kenai Peninsula Borough Bd. of Equalization*, 247 P.3d 990, 997 (Alaska 2011)).

[7] *Marcy v. Matanuska-Susitna Borough*, 433 P.3d 1056, 1059-60 (Alaska 2018) (de novo review of mootness and constitutional issues); *Hahn v. GEICO Choice*

standard of review, we apply our 'independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[8] "We review an agency's factual findings to determine whether they are supported by substantial evidence, meaning such relevant evidence as a reasonable mind might accept as adequate to support the agency's conclusion."[9]

We review the superior court's award of attorney's fees for abuse of discretion.[10] "We will find an abuse of discretion when the superior court's award of attorney's fees is 'arbitrary, capricious, manifestly unreasonable, or improperly motivated.' "[11]

---

*Ins. Co.*, 420 P.3d 1160, 1166 (Alaska 2018) (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petrol., Inc.*, 322 P.3d 114, 122 (Alaska 2014)) ("Contract interpretation is a question of law, subject to de novo review."); *Mun. of Anchorage v. Locker*, 723 P.2d 1261, 1262 (Alaska 1986) (describing whether provisions limiting liability were unconscionable as question of law); *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) (de novo review of whether particular claim has been waived); *State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Michelle P.*, 411 P.3d 576, 581 (Alaska 2018) (de novo review of jurisdictional issues).

[8]     *Hahn*, 420 P.3d at 1166 (quoting *ConocoPhillips Alaska, Inc.*, 322 P.3d at 122).

[9]     *Teck Am. Inc. v. Valhalla Mining, LLC*, 528 P.3d 30, 34 (Alaska 2023) (internal quotation marks and brackets omitted) (quoting *French v. Alaska Oil & Gas Conservation Comm'n*, 498 P.3d 1026, 1028 (Alaska 2021)).

[10]     *Hodari v. State, Dep't of Corr.*, 407 P.3d 468, 471 (Alaska 2017).

[11]     *Id.* (quoting *Roderer v. Dash*, 233 P.3d 1101, 1106 (Alaska 2010)); *see also Miller v. State, Dep't of Admin., Div. of Ret. & Benefits*, No. S-17812, 2022 WL 3059638, at *7 (Alaska Aug. 3, 2022) (unpublished) (applying standard to fees awarded under Appellate Rule 508(e)(4)).

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Concluding Jeanine Was Not Entitled To Relief.

Jeanine argues that the Plan should not be interpreted to preclude special damages; the program her son attended qualifies as a residential treatment facility under the Plan; the Division's and Aetna's decisions to the contrary were arbitrary, capricious, and not supported by the evidence; and the Division and Aetna breached their contractual obligations and violated her constitutional rights. The Division argues that this appeal is moot because Jeanine has already obtained the full relief to which she is entitled under the Plan. It also argues that the claims Jeanine raised for the first time before the superior court are outside the scope of the administrative appeal.

An administrative appeal considers whether the agency's final decision should be reversed.[12] Because Jeanine's contract and constitutional claims were not raised to the Division until after the final decision was issued and there was no evidence submitted to or considered by the Division regarding these claims, they are outside the scope of this administrative appeal.[13]

"A claim is moot where . . . it has lost its character as a present, live controversy, that is, where a party bringing the action would not be entitled to any relief even if he or she prevailed."[14] Between payments by the primary insurer and Aetna,

---

[12] *See* Alaska R. App. P. 601(b); AS 22.10.020(d).

[13] *See Pacifica Marine, Inc. v. Solomon Gold, Inc.*, 356 P.3d 780, 793 (Alaska 2015) ("[W]hen courts hear appeals from agency decisions, the record on appeal in such cases properly consists of evidence that was either submitted to or considered by the administrative board." (internal quotation marks omitted) (quoting *Alvarez v. Ketchikan Gateway Borough*, 28 P.3d 935, 939 (Alaska 2001))); *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) ("Arguments raised for the first time on appeal are generally waived.").

[14] *Rude v. Cook Inlet Region, Inc.*, 294 P.3d 76, 87 (Alaska 2012) (quoting *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007)).

the cost of Jeanine's son's treatment has already been covered. If damages beyond the cost of treatment are not available under the Plan, then Jeanine cannot be entitled to additional relief in this context, regardless of the merits of her claims.

Contract interpretation is a question of law that we review de novo.[15] The relevant section of the Plan, titled "Plan Liability," reads:

> The full extent of liability under the **plan** and benefits conferred, including recovery under any claim of breach, will be limited to the actual cost of **hospital** and health services as described herein and will specifically exclude any claim for general or special damages that includes alleged "pain, suffering, or mental anguish."[16]  (Emphasis in original.)

The plain language of the Plan clearly states that general and special damages are excluded. General damages "flow naturally from [a] breach of contract" while consequential or special damages "follow naturally, but indirectly, . . . and thus are other foreseeable damages within the reasonable contemplation of the parties at the time the contract was made."[17]

Jeanine claims the Plan does not exclude consequential damages and she argues that she is entitled to coverage she reasonably expected from a lay interpretation of policy terms because the Plan is a contract of adhesion. Jeanine alleges "significant adverse financial, medical, and emotional and mental health impacts" from the denial of benefits, including $7,225 in special damages that she incurred trying to pay for her son's treatment and travel expenses related to withdrawing him from the program. She

---

[15]  *Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160, 1166 (Alaska 2018).

[16]  AlaskaCare Employee Health Plan § 14.2 (2017), https://drb.alaska.gov/docs/booklets/SelectBenefitsEmployeeBooklet2017.pdf; AlaskaCare Employee Health Plan § 15.2 (2018), https://drb.alaska.gov/docs/booklets/SelectBenefitsEmployeeBooklet2018.pdf.

[17]  25 C.J.S. *Damages* §§ 4-5 (2024). Consequential and special damages "are essentially synonymous." *Id.* § 4.

argues any limitation on damages would be unconscionable and unenforceable, and she claims the Plan's express preclusion of damages for pain, suffering, or mental anguish "does not preclude the court from awarding non-economic damages in a fair amount to compensate the insured for other losses and inconvenience resulting from [the Division's] breach."

Although "[a]n insurance policy may be considered a contract of adhesion, . . . [which] should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language,"[18] we have explained that the same rule does not apply to self-funded health plans, which are considered self-insurance.[19] In *Best v. Fairbanks North Star Borough*, we laid out the differences between insurance and self-insurance, directing the reviewing court to the substance of the parties' relationship, focusing both on the parties' bargaining power and whether one assumes another's risk for profit (insurance) or whether the insured retains its own risk of loss (self-insurance).[20] We acknowledged that the health plan at issue had some characteristics of insurance but nevertheless determined it was self-insurance because: it was funded by the Borough and employee contributions; the risk of loss was not contracted out; it did not run at a profit; and although the individual suing did not bargain for the terms herself, the terms were negotiated by union representatives.[21] Because the health plan "lack[ed] the for-profit and adhesionary

---

[18] *Stordahl v. Gov't Emps. Ins. Co.*, 564 P.2d 63, 65-66 (Alaska 1977) (footnote omitted).

[19] *Best v. Fairbanks N. Star Borough*, 493 P.3d 868, 873-74 & n.14 (Alaska 2021) (distinguishing insurance from self-insurance).

[20] *Id.* at 873.

[21] *Id.* at 873-74.

-10- *2060*

aspects typical of an insurance policy," we concluded that the usual tools of contract interpretation should apply and not the "special lens that favors an insured."[22]

Regular tools of contract interpretation apply here too. The State does not provide healthcare benefits to make a profit or offer an adhesionary insurance contract. The Plan is bargained for by unionized employees on a health benefits evaluation committee that analyzes the administration of the Plan and advises the Commissioner of Administration about benefits and their administration. The Plan is self-insurance. Accordingly, the Plan's clear, unambiguous terms prevail, and Jeanine is not entitled to general or special damages.[23]

But even if the Plan were not self-insurance and Jeanine were entitled to a more favorable interpretative approach, she provides no support for her claim that a reasonable person would expect the Plan to cover the damages she seeks. The plain language unambiguously limits coverage to the "actual cost of hospital and health services," even "under any claim of breach," and it "specifically exclude[s] any claim for general or special damages that includes alleged 'pain, suffering, or mental

---

[22] *Id.* at 874.

[23] *See id.* ("Interpreting the plan as an ordinary contract, we give primary effect to the language of the contract but also consider extrinsic evidence of the parties' intent at the time the contract was made." (internal quotation marks omitted) (quoting *Beardsley v. Robert N. Jacobsen & Darlene F. Jacobsen Living Tr.*, 472 P.3d 500, 504 (Alaska 2020))). Jeanine provided no extrinsic evidence that would give the terms a different meaning.

anguish.' "[24]  Jeanine does not explain how this clear language could mean anything else.[25]

Jeanine has not demonstrated that she is entitled to damages under the Plan. Even if she prevailed on her contract and constitutional claims, she would not be entitled to relief in the context of her administrative appeal, and those claims are therefore moot.

**B.    The Superior Court Did Not Err By Awarding Attorney's Fees.**

Jeanine argues the superior court erred when it awarded attorney's fees to the Division in the amount of $7,329. Alaska Rule of Appellate Procedure 508(e)(4) governs the award of attorney's fees in administrative appeals.[26]  Under that rule, "the court shall award the prevailing party 20% of its actual attorney's fees that were necessarily incurred."[27]  There are limited exceptions to this rule, including in cases where "the court determines that an award of fees would be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts if not reduced."[28]  "Application of Appellate Rule 508(e) is and should remain

---

[24]    AlaskaCare Employee Health Plan § 14.2 (2017), https://drb.alaska.gov/docs/booklets/SelectBenefitsEmployeeBooklet2017.pdf; AlaskaCare Employee Health Plan § 15.2 (2018), https://drb.alaska.gov/docs/booklets/SelectBenefitsEmployeeBooklet2018.pdf.

[25]    Jeanine also argues that any limitation of damages under the Plan is unconscionable and unenforceable. But she provides no legal support or analysis for this claim. It is therefore waived. *See Lot 04B & 5C, Block 83 Townsite v. Fairbanks N. Star Borough*, 208 P.3d 188, 194 n.21 (Alaska 2009) (holding issue waived for inadequate briefing, even for pro se litigant); Alaska R. App. P. 212(c)(1)(H) (requiring arguments to include "the legal and factual support for those contentions, with citations to the authorities, statutes, and parts of the record relied on").

[26]    Alaska R. App. P. 508(e)(4); *see* Alaska R. App. P. 601(b) (providing that final decision of administrative agency may be appealed to superior court).

[27]    Alaska R. App. P. 508(e)(4).

[28]    Alaska R. App. P. 508(e)(4)(B).

a matter committed to the sound discretion of our trial courts, when sitting as intermediate appellate tribunals."[29]

Jeanine argues the award is onerous and would deter other State employees from bringing similar appeals. She also argues the Division's fees are not reasonable because they reflect market rate rather than the rates billed to the agency. The Division argues the costs associated with this appeal are not similar to other AlaskaCare Employee Health Plan members "simply appealing a denial of benefits" because 100% of Jeanine's medical claims were paid before she appealed to the superior court and Jeanine raised new claims in the superior court, which required supplementing the record.

The superior court carefully analyzed the Division's request for fees and reduced the award to include only those hours deemed reasonable. The court did not find the reduced award to be so onerous that it would dissuade similarly situated litigants from using the courts. And we have approved of the use of average hourly billing rates for private attorneys to calculate permissible fees for assistant attorneys general.[30] Although it would have been within the superior court's discretion to reduce the award to a smaller percentage of the fees reasonably incurred, Jeanine has not shown why the failure to do so was "arbitrary, capricious, manifestly unreasonable, or improperly motivated."[31] The superior court did not abuse its discretion by awarding partial attorney's fees to the Division.

## V.    CONCLUSION

The superior court's decision is AFFIRMED.

---

[29] *Rosen v. State Bd. of Pub. Acct.*, 689 P.2d 478, 482 (Alaska 1984).

[30] *See, e.g.*, *Thomas v. State*, 377 P.3d 939, 951 n.41 (Alaska 2016).

[31] *Hodari v. State, Dep't of Corr.*, 407 P.3d 468, 471 (Alaska 2017) (quoting *Roderer v. Dash*, 233 P.3d 1101, 1106 (Alaska 2010)).